[Crim. No. 1177. First Appellate District, Division One.—February 11, 1925.]

THE PEOPLE, Respondent, v. EDWARD G. EKSTROMER, Appellant.

[1] CRIMINAL LAW—DRIVING AUTOMOBILE WHILE INTOXICATED—VIOLATION OF SECTION 112, CALIFORNIA VEHICLE ACT—DEFINITION OF TERM "UNDER THE INFLUENCE OF INTOXICATING LIQUOR"—INSTRUCTIONS—EVIDENCE.—In a prosecution for driving an automobile while under the influence of intoxicating liquor, in violation of section 112 of the California Vehicle Act, it cannot be said that any prejudicial error resulted either from the definition, given by the trial court, that the "term under the influence of intoxicating liquor means that he must have drank enough intoxicating liquor to have disturbed the actions of his physical or mental faculties so that they were no longer in their natural or normal condition," or from its instruction that the "jury must accept the common, ordinary definition" of the words "influence" and "intoxicating" according to their context and approved usage of our language, where no objection on the part of the defendant to the instructions given is disclosed, and defendant himself practically asked a definition which conceded common usage and understanding, and which the trial court gave to the jury, and two witnesses testified positively that defendant was "intoxicated" and gave reasons for their opinion, and the elements of their opinion were matters which, if believed by the jury, would have operated to impair the ability of one to operate an automobile to an appreciable extent.

[2] ID.—WHEN DRIVER IS UNDER INFLUENCE OF INTOXICATING LIQUOR WITHIN MEANING OF STATUTE.—If intoxicating liquor has so far affected the nervous system, brain or muscles of the driver of an automobile as to impair, to an appreciable degree, his ability to operate his car in the manner that an ordinarily prudent and cautious man, in the full possession of his faculties, using reasonable care, would operate or drive a similar vehicle under like conditions, then such driver is "under the influence of intoxicating liquor" within the meaning of the statute.

[3] ID. — SECTION 112, CALIFORNIA VEHICLE ACT — STATUTORY CONSTRUCTION.—Section 112 of the California Vehicle Act was designed to protect the public from the menace of automobiles operated upon the public highway with inadequate or no effi-

Intoxication of person operating automobile, note, **L. R. A.** 1917A, 313.

cient control, in a world of traffic difficult of management under normal conditions, and should be liberally construed to effect its purpose.

[4] ID.—DEGREE OF INTOXICATION—FACT.—In a prosecution for violation of section 112 of the California Vehicle Act, it is not necessary to prove any specific degree of intoxication, but in each case the question as to whether the defendant was "under the influence of intoxicating liquor" is one of fact to be determined by the court or jury from all of the circumstances of the case.

[5] ID.—VERDICT—EVIDENCE.—In such prosecution, there is no merit in the contention that the evidence is insufficient to justify the verdict.

---

(1) 16 C. J., p. 751, n. 95, p. 1059, n. 42; 17 C. J., p. 210, n. 95. (2) 28 Cyc., p. 49, n. 56 New.   (3) 28 Cyc., p. 49, n. 56.   (4) 28 Cyc., p. 49, n. 56 New.   (5) 28 Cyc., p. 49, n. 56 New, p. 50, n. 58.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Michael J. Roche, Judge. Affirmed.

The facts are stated in the opinion of the court.

Daniel A. Ryan for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

ST. SURE, J.—Defendant was convicted of violating section 112 of the California Vehicle Act (Stats. 1923, p. 553), in driving and operating an automobile on a public highway while under the influence of intoxicating liquor. He was sentenced to ninety days in the county jail, and he now appeals from the judgment and from an order denying his motion for a new trial.

Section 112 of the Vehicle Act reads as follows: "Persons under influence of liquor or drugs. No person who is under the influence of intoxicating liquor or who is an habitual user of narcotic drugs shall drive a vehicle on any public highway within this state. Any person violating the provisions of this section shall upon conviction be punished by imprisonment in the county jail for not less than ninety days nor more than one year or by imprisonment in the state

prison for not less than one or more than three years or by a fine of not less than two hundred dollars nor more than five thousand dollars.''

A police officer arrested defendant soon after his automobile and that of one Bates collided at Bush and Leavenworth Streets, San Francisco, between 7:30 and 8 o'clock P. M. of October 13, 1923. Defendant had been driving south on Leavenworth Street, and crossed Bush, when the cars collided at the left front wheels. Defendant immediately backed from Bates' car and came in contact with a machine in the rear, which had stopped from curiosity of its driver. According to one statement, defendant was at the west curb on Leavenworth Street when the officer came on the scene, started away from there down Leavenworth Street, disregarded the officer's order to stop, was overtaken and again came to the curb some hundred feet farther down on the second command of the officer, who then placed him under arrest. According to his own statement defendant backed from the impact with Bates' car, swung into Leavenworth Street, and was proceeding south on Leavenworth Street when stopped by the police officer and placed under arrest. There is a conflict as to whether the defendant was merely crossing Bush Street on his way south on Leavenworth, or turning from Leavenworth east into Bush, just preceding the collision with Bates. The prosecution's position is that defendant was crossing Bush Street while proceeding south on Leavenworth, but ''too far over'' on the wrong side of the street; and a positive statement is made that the position of the car was such that he could not have been attempting any turn; but defendant and a friend with him in his car at the time state that he was making the turn into Bush, and that both cars were going very slowly on account of heavy traffic. No one saw defendant's car before the impact except Bates, and he did not see it until it got ''right close up.'' He stated that he was back of the crossing on Leavenworth, his car stationary, waiting for traffic to pass before crossing; and witness Holmes' testimony bears this out.

The evidence was in direct and almost equally divided conflict, both on the question of details of the collision and on the subject of intoxication. Witness Holmes, standing on the corner preceding and at the time of the collision, and

71 Cal. App.—16

the arresting officer, Mantell, testified positively that defendant was intoxicated; and the driver of the other car featuring in the collision made the statement that he thought defendant ·was drunk by his actions in driving the machine, that he really meant he so judged by the collision. He further testified that although he stood on the running-board of defendant's car, right next him, immediately following the collision, he smelled no liquor, and that about half an hour later at the police station defendant seemed "very much sober."

The defendant is accused by the police officer of attempting to run away after the collision, but the charge is denied by defendant and by his companion Peterson, who was in the car with him at the time, and depends solely upon the facts of whether his car was parked at the curb and driven from there after the arrival of the officer and against his order to remain there, as the latter claims, or whether it merely came near the curb to clear away after exchange of data with the other drivers, started down the hill and came to the curb on the whistle of the officer, who boarded the car while in motion and accused the defendant of flight.

It was at this latter point that the officer ordered defendant out of his car, made him walk a line to a lamp-post and back, and then placed him under arrest for driving while intoxicated. The officer testified that defendant was intoxicated. As basis for this opinion he stated that at first (on order) defendant "didn't seem to pay any attention to what I was saying to him"; that defendant's breath smelled of liquor; defendant admitted he had been drinking—it was his birthday; his walk was slow, not irregular—he walked to the lamp-post, "kind of staggered against it"; he was dazed; he did not speak clearly, hard to understand.

The bystander, Holmes, testified that defendant was intoxicated. He so judged from the following: defendant's breath smelled of liquor; he was not steady on his feet; he walked the line unsteadily; the manner in which he got out of the machine; his walking directly into a lamp-post while walking the line.

Defendant testified that he had arrived in town in the afternoon following a business trip, had accidentally met his

friend, invited him to dinner, and driven him to call at the home of a mutual friend to ascertain the nature and time of an invitation on which acceptance or rejection of defendant's dinner invitation would be grounded; that while there they each had one drink, a ginger-ale highball, and that was the only drinking he had done; that from that place he drove with his friend en route to dinner, and came to the corner where the collision took place; that after exchange of data with Bates he backed to clear, struck slightly a machine stopped behind him, exchanged data with the second driver, backed nearly to the curb, started off down the hill and came to the curb again on hearing the whistle of the officer, who boarded the car while it was on its way to the curb, accused him of running away, and used abusive language to him on denial of the charge. Arrived at the curb he was made to alight and climb out through the gear shift and brake at his right (the car being a right-hand drive car); he was then made to walk a line and back, and placed under arrest for driving while intoxicated. He stated to the officer, "I have had one drink—it is my birthday." He was not intoxicated. At the Hall of Justice he wrote a check for his bail.

His friend's story was substantially the same, with the additions that defendant was not to blame for the accident, that he was naturally slow of speech, had in fact a slight impediment in his speech; that his gait was unusual, somewhat of a straddling walk. He was quick-tempered and resented the officer's charge that he was running away; the officer replied with the statement, "I am going to arrest you for being intoxicated, anyhow, in a car," and on defendant's remonstrance told him, "You be quiet," or some words, to "push him or something," and "You get out of the car." He got out of the car awkwardly, of necessity, because of the gear and brake lever. He walked to the lamp-post, asked the officer, "What do you want me to do now?" and on being told "Walk back," did so. He did not bump the lamp-post; he denied he was intoxicated, and he was absolutely sober.

The jury found defendant guilty as charged in the information. Motion for new trial and motion for probation were denied.

The defendant requested five instructions, three on reasonable doubt and one for acquittal, which were "refused as given in substance elsewhere," and the fifth, which was given, as to the burden of proof. The term "under the influence of intoxicating liquor" is not defined in the California Vehicle Act, and the instructions requested by defendant contained no definition of it, but used the term in each of his proposed instructions as though it were one commonly understood. The court, among others, gave the following instructions: (1) "I instruct you that the term 'under the influence of intoxicating liquor' means that he must have drank enough intoxicating liquor to have disturbed the actions of his physical or mental faculties so that they were no longer in their natural or normal condition"; and (2) "The law as herein set forth does not define the terms 'influence' or 'intoxicating,' and therefore the jury must accept the common, ordinary definition of these words according to their context and approved usage of our language."

Defendant now complains that the judgment, if allowed to stand, is authority for the proposition that any degree of intoxication, however slight, while driving an automobile, constitutes a crime under the statute, rather than such intoxication as, when applied to the driving of an automobile, shows an impairment of ability to drive as an ordinarily prudent person would do. He attacks the instructions of the trial court hereinbefore quoted, on the ground that the definition of the term "under the influence of intoxicating liquor" was insufficient and incorrect; and further, that the court not only failed to define the term "under the influence of intoxicating liquor" properly, but in the absence of any definition in the statute itself of the words "influence" and "intoxicating," left such definition for the jury to determine. He asserts that prejudicial and fundamental error resulted.

Appellant also attacks the validity of the conviction on the ground that it is contrary to law and the evidence, on the premise that the instructions did not correctly define the law and that there was no evidence directly bearing on defendant's ability to drive an automobile.

[1]  In disposing of the first point we may say that the record does not disclose any objection on the part of the defendant to the instructions given, and that, indeed, he himself practically asked a definition which conceded common usage and understanding, and which the court gave when, at his request, it instructed the jury: "You are instructed that it is not necessary for the defendant to show that he was sober, but that the burden of proving that he was *under the influence of liquor* is upon the prosecution, and before you can convict it is necessary not only that the prosecution prove that he was under the influence of liquor but to prove the same beyond all reasonable doubt." In none of the other requested instructions did defendant question or define the phrase unless it may be said that in one, "refused as given elsewhere," he concedes that the slightest influence is sufficient by requesting the court to charge: "You are instructed that if the testimony is so equally balanced that you are unable to determine one way or the other whether or not the defendant was under the influence of liquor or was *wholly free* of such influence, then you must acquit the defendant."

The requested instruction which was given clearly contrasts the condition of "sober" with "under the influence of liquor," thereby affording substantial ground for the substitution of the term "intoxicated" for the latter. It is generally recognized that intoxication is a matter of non-expert opinion, and the charge to the jury to determine the meaning of the words "influence" and "intoxicating" by the approved usage of our language was, in fact, but such a statement. Two of the witnesses in the case testified positively that defendant was "intoxicated" and gave the reasons for their opinion. Elements of their opinions were matters which, if believed by the jury, would have operated to impair the ability of one to operate an automobile to an appreciable extent. Such being the case we cannot believe that any prejudicial error resulted either from the definition given by the court or its instruction to the jury to accept the common ordinary definition of the words.

We have read and considered the cases of *People* v. *Weaver,* 188 App. Div. 395 [177 N. Y. Supp. 71], and *People* v. *Dingle,* 56 Cal. App. 445 [205 Pac. 705], cited by appel-

lant. We are not in accord with the holding of the former, but quote with approval the following language from the latter: " . . . [2] With respect to the meaning of the phrase 'under the influence of intoxicating liquor,' as used in this statute, we think that we are well within the bounds of accuracy in saying that if intoxicating liquor has so far affected the nervous system, brain, or muscles of the driver of an automobile as to impair, to an appreciable degree, his ability to operate his car in the manner that an ordinarily prudent and cautious man, in the full possession of his faculties, using reasonable care, would operate or drive a similar vehicle under like conditions, then such driver is 'under the influence of intoxicating liquor' within the meaning of the statute."

We have also read cases from other jurisdictions showing in some that the term "intoxicated condition" or "under the influence of intoxicating liquor" was generally accepted and understood and unnecessary to define; and also showing "any degree" of intoxication or influence of liquor of drivers under highway acts, a crime. (*Nelson* v. *State*, 97 Tex. Cr. 210 [261 S. W. 1046]; *State* v. *Hatcher*, 303 Mo. 13 [259 S. W. 467]; *Hart* v. *State*, 26 Ga. App. 64 [105 S. E. 383].)

[3] Section 112 of the California Vehicle Act was designed to protect the public from the menace of automobiles operated upon the public highway with inadequate or no efficient control, in a world of traffic difficult of management under normal conditions, and should be liberally construed to effect its purpose. [4] We think that such legislation is well in line with and motivated by the same impulses that inspired the enactment of statutes prohibiting railroad employees from drinking intoxicants while on duty; that in prosecutions under the statute it is not necessary to prove any specific degree of intoxication, but that in each case where a person is charged, as appellant is here, with violating the provisions of section 112 of the Vehicle Act, the question as to whether the defendant was "under the influence of intoxicating liquor" is one of fact to be determined by the court or jury from all the circumstances of the case.

[5] The point as to the insufficiency of the evidence to justify the verdict, in view of what we have said, has no merit as based on a conflict of evidence.

We are of the opinion that the judgment and order should be, and they are, affirmed.

Knight, J., and Tyler, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April, 8, 1925.