STATE v. JOHNSON.

No. 4931.   Decided April 14, 1930.   (287 P. 909.)

*F. W. James* and *R. O. Pearse,* both of Salt Lake City, for appellant.

*George P. Parker,* Attorney General, and *L. A. Miner,* Assistant Attorney General, for the State.

STRAUP, J.

The defendant was convicted of involuntary manslaughter and appeals. It was charged he killed another December 24, 1928, while driving an automobile at an intersection of public streets in Salt Lake City. The alleged unlawful acts in the information are that the defendant ■ operated the automobile in excess of 30 miles an hour, failed to give warning of its approach, drove it on the left-hand side of the center of the street, failed to observe a proper lookout, drove it in a reckless manner with-

out having it under safe and immediate control, and operated and drove the automobile while the defendant was under the influence of intoxicating liquor, in consequence of all of which, it is alleged, the defendant willfully, recklessly, and unlawfully operated the automobile against and killed the person named in the information. Operating an automobile on a public street or highway by one under the influence of intoxicating liquor is itself an unlawful act and an offense, as are also the other charged acts. At the conclusion of the evidence, the defendant requested the court to withhold from the jury the charge that he was under the influence of liquor, on the ground of insufficiency of evidence to support such charge. The request was refused, and the charge, with the other alleged unlawful acts, submitted to the jury, who returned a verdict of guilty of involuntary manslaughter as charged in the information.

Complaint is made of the ruling. We think the complaint well founded. The accident occurred at about 7 o'clock p. m. Three or four hours thereafter, in response to a telephone call, the chief of police called at the defendant's residence in the city. He testified he there found the defendant, his father, and other members of the family in the house; that the defendant, in an adjoining room, was sitting on a bed giving aid to one of his small children suffering with earache; that the chief went close to the defendant to ascertain if he could detect liquor on his breath, and observed, as he testified, "a considerable odor of liquor on his breath." That is all the evidence pointed to as showing that the defendant was under the influence of intoxicating liquor at the time of the accident. We think it insufficient. The chief did not, nor did any other witness, testify that the defendant, by speech, act, or conduct of any kind, appeared to be, or acted like one, under the influence of liquor, or otherwise acted or appeared to be in such respect in an unnatural or a subnormal condition. The defendant testified that he had not drunk any liquor on the day in question; and he, and other witnesses

who saw and conversed with him shortly before and after the accident, testified that he was not under the influence of liquor. We think the court erred in refusing the request and in submitting such issue to the jury.

The ruling of the court below in such respect is not defended nor attempted to be justified by the state. It is assigned as error and discussed by the defendant but not by the state. No attempt is made by it to point or refer to any evidence in the record in support of the ruling, nor is there any claim made by it that there is any such evidence. Such claim, however, is made by the dissenting opinion by pointing to and regarding matters in the record as supporting the ruling. That the claim may so be made though it is not urged by the state is not doubted. But that no such claim was made or urged by the state has a bearing on the significance and materiality of the matters pointed to. In addition to the testimony that the chief of police, more than three hours after the accident, on going near the defendant in his house to get, as he testified, a "whiff" of the defendant's breath and observed "a considerable odor of liquor on his breath," the other matters so pointed to in support of the ruling and to show that the defendant was under the influence of intoxicating liquor consist of the evidence, though in conflict, that the defendant just before the accident drove the car against a red light, drove it on the wrong side of the street, drove it at an excessive speed, and operated it against others at a street crossing. Though there was sufficient evidence to show that the defendant committed some or all of such alleged unlawful acts charged in the information, it does not relevantly or probatively follow that he also was guilty of the alleged unlawful act of driving the car while he was under the influence of intoxicating liquor. In other words, driving an automobile in violation of traffic rules or ordinances in one or more particulars, or driving it negligently or even recklessly, resulting in an accident, does not relevantly tend to prove that the driver was under the influence of intoxi-

cating liquor. There is no probative relation of the one to the other. It may not be doubted that many, "as sober as a judge," and as often, have driven automobiles against red lights, frequently violated the speed limit, or otherwise violated traffic rules, and met with or caused accidents through such violations or negligent driving. To characterize such acts as relevantly tending to show intoxication is to characterize a large per cent of automobile drivers as being intoxicated or under the influence of intoxicating liquors when operating automobiles. General rules governing probative effects of evidence should not be disregarded or prostrated to suit emergencies of a particular case.

It further in effect is observed that, though the evidence be regarded as insufficient to show that the defendant was under the influence of intoxicating liquor, still he was not prejudiced because such issue was submitted to the jury, for the reason that there was ample evidence to sustain the conviction on the other unlawful alleged acts. The question presented is not one of sufficiency of evidence to justify the verdict or judgment. No such complaint is made. The question presented is as to whether error was committed in submitting to the jury a material issue upon which it is claimed there was insufficient evidence to support it, and, if so, whether the error was prejudicial. If in a civil case where several acts of negligence are charged, each constituting actionable negligence, and the evidence is insufficient as to one of such acts, but against objections nevertheless is submitted to the jury and a general verdict rendered in favor of the plaintiff, hardly any one would contend that no prejudice resulted on the ground that the evidence was sufficient to sustain the verdict on the other alleged acts. In principle, the matter in hand is not different. The jury here rendered a general verdict of guilty "as charged in the information." It thereby found the defendant guilty of an unlawful act not supported or justified by the evidence. Because the unlawful act related to or concerned intoxicating liquors does not

call for an abridgment of the general rule that to justify a submission of a material issue to a jury there must be sufficient evidence to support it, nor as to the prejudicial effect against whom it is submitted and a general verdict rendered in favor of his adversary having the burden of proof. The general verdict here is not severable. Letting all the issues as to all of the alleged unlawful acts to the jury gave them to understand that they could render a verdict of guilty on any one or all of them, which was required to be expressed only by a general verdict. Some of the jurors may have been induced to join in the verdict on one or more of the alleged acts, some on other alleged acts, but on which or on all it is impossible to tell. That none of the jury was induced to join in the verdict because of the submission of the issue as to intoxication is also impossible to tell. We cannot review a criminal action like an equity case—try it de novo on the record—and ourselves determine the guilt or innocence of the defendant, the weight to be given conflicting evidence, the credibility of the witnesses, or the weight or credit to be given the claim or testimony of the defendant. Though the evidence may amply or satisfactorily sustain the conviction, yet it is not within our province to determine the guilt of the defendant and in such case justify erroneous and adverse rulings against him nonprejudicial. That is to say, if on the record we think a defendant guilty or ought to have been convicted, we may not regard any kind of a trial good enough for him. We thus think the ruling not only erroneous, but also prejudicial. Its very nature had the tendency and was calculated to do harm, and on the record we cannot say it did no harm or did not influence the verdict. The test of determining prejudicial error is stated in *Jensen* v. *Utah Railway Co.* (Utah) 270 P. 349.

The defendant on his direct examination having testified that he was not under the influence of intoxicating liquor at the time of the accident, the district attorney, on cross-examination, asked him:

"You were charged in case No. 8255 in the police court of this city on the 6th day of December 1928 with the crime of drunkenness to which you entered a plea of guilty on December 13, 1928. Is that true?"

The question being objected to by counsel for the defendant on the ground, among other grounds, that the state could show only a conviction of a felony, the district attorney said:

"We submit that in the light of this charge, that this defendant was driving this car while intoxicated; in the light of the result that happened, in the light of the fact that he denies he was intoxicated, and we have testimony to the effect that he was under the influence of liquor, we have a right to cross-examine him with reference to his habits respecting intoxicating liquors so near the date that this crime is charged to have been committed, and I propose to follow that up with showing a later date than the 6th day of December, and it is competent to show his habits and as affecting his credibility."

Counsel for the defendant urged that the inquiry was not competent or material for either purpose. The objection was overruled, and the witness answered "No." Then the district attorney propounded these further questions to the defendant, all of which were objected to and all objections overruled, the court, in ruling on one of them, observing, "it might be shown to test the credibility of the witness," and after such rulings the defendant answered the questions in the negative:

"And in that case is it not a fact that you were sentenced on the 20th day of December to pay a fine of $50.00; that $35.00 of which was suspended and you were to serve five days in the city jail or pay the $15.00? Is that not true?

"And isn't it a fact that on the 22nd day of December there was a stay of execution given you until December 24th, the very day that this accident occurred?

"And isn't it a fact that on December 26th, the day after Christmas, that you paid that fine of $15.00?

"Did you have anyone pay that fine of $15.00 on account of your being in that case as the defendant?

"Isn't it a fact that you were to have appeared before the city court at the public safety building on December 24th to settle that fine?

"I call your attention, Mr. Johnson, to another case against you, No. 5470 on the city records of the police court, and to April 25, 1928, and ask you if you were not a defendant in that case.

"Haven't you ever been charged with the possession of intoxicating liquors in the city court of Salt Lake City?

"Were you not charged in case No. 5470, on April 25, 1928, with the possession of intoxicating liquors, and did you not, on May 10th of that year, plead guilty to that crime, and on May 17th of that year were you not sentenced to pay a fine of $200.00 or serve ninety days in jail? And is it not a fact that on August 6th of that year you finished paying the fine?

. "You have never been in any court in this city, charged with the possession and use of intoxicating liquors?"

The state then, over objections of counsel for defendant, read in evidence the records of the city court to the effect that the defendant, on December 6, 1928, was charged with the offense of drunkenness to which a plea of not guilty was entered and the case set for trial December 15, 1928, at which time the plea of not guilty was withdrawn and a plea of guilty entered and the time of sentence set for December 20th, at which time the defendant was sentenced to pay a fine of $50 of which $35 was suspended, and on default of payment of the balance of the fine the defendant was sentenced to be confined in the city jail for a period of five days and a stay of execution granted until December 26th, at which time the fine was paid and the case "was stricken"; that on April 25, 1928, the defendant, in the city court, was charged with the crime of having liquor in his possession, to which a plea of not guilty was entered and the case set for trial May 7, 1928, at which time the plea of not guilty was withdrawn and a plea of guilty entered, and the case continued until May 17, 1928, for sentence. No other record proceeding of such case was read in evidence.

The city court clerk producing the records, however, was asked by the district attorney, and he answered:

"Q. You have further records there? A. I have.

"Q. Reciting the final settlement of the case? A. Yes, sir.

"The District Attorney: That is all."

What judgment was rendered or what sentence imposed in such case is not shown, except the city clerk later was called and was asked by the district attorney:

"I will ask you to state in that case No. 5470, the charge of possession of intoxicating liquor, if the record shows that the defendant paid the fine that was imposed?"

The witness answered:

"As I remember I collected either two or three payments from Mr. Johnson myself."

The state called the attorneys who represented the defendant in such cases in the city court, who testified that they were authorized to appear in such cases for the defendant, one of them testifying that he had only one conversation with the defendant in which he told the defendant that he would "get the matter taken care of for him, and then I just went ahead and used my own judgment and got it taken care of."

In justification of the answers of the defendant that he had not pleaded guilty to the offenses referred to, he, in line with the decision of this court in *State* v. *Sutter* (Utah) 266 P. 265, offered to show that he had not in person pleaded guilty to such offenses and was not present in court when whatever sentence or judgment in such cases was imposed or rendered, and that he had been advised by his present counsel that, the defendant not having been present in open court, and not having entered a plea of guilt in person, a plea of guilt by his counsel would not constitute a proper plea of guilt, and that a judgment rendered or sentence imposed upon such a plea had no binding effect,

and hence the defendant could truthfully say that he had not pleaded guilty to such offenses. The offer, on objections of the state, was refused, the district attorney, in effect, contending that, if counsel were authorized to represent the defendant in such cases, the withdrawals by his counsel of pleas of not guilty and the entering of pleas of guilt, though in the absence of the defendant, constituted legal pleas of guilt by the defendant, notwithstanding the decision in *State* v. *Sutter*, supra.

All these rulings are assigned as error. The offenses of drunkenness and possession of intoxicating liquor, under our statute, are only misdemeanors. The rulings permitting the interrogation of the defendant on his cross-examination and requiring him over his objection to answer as to whether he, on December 6, 1928, was charged with and pleaded guilty to drunkenness in the city court, and if in April, 1928, he was charged with and pleaded guilty to the possession of intoxicating liquor, for the purpose of showing the defendant's "habits respecting intoxicating liquor" or for the purpose of showing a probability or likelihood that the defendant was under the influence of intoxicating liquor on December 24, 1928, when the accident happened, clearly were erroneous.

The defendant having offered himself as a witness, and on his direct examination having testified that he, at the time of the accident, was not under the influence of intoxicating liquor, were such inquiries on cross-examination pertinent as affecting his credibility? A witness, as affecting his credibility, may be asked if he had not previously been convicted of a felony, and the kind or name of the felony, but not as to the details or circumstances of it. 1 Wharton, Crim. Ev. (10th Ed.) 904; 40 Cyc. 2610. And if the witness denies the conviction, according to the weight of authority he may be contradicted by the record of a court of competent jurisdiction showing the conviction. There are authorities to the effect that a conviction may be shown only by record. However, we

believe the weight of authority to be that a witness, upon his cross-examination, may be asked concerning such a conviction, and, if he denies it, the record may be produced to show it. But, independently of a statute, and as stated in 40 Cyc. 2607:

"The fact that a witness has been convicted of crime may be brought out as bearing on his credibility, where the crime amounts to a felony, or is infamous in its nature, and involves moral turpitude. But it is usually held that a witness is not to be discredited by showing his conviction of a mere misdemeanor, or minor offense not involving turpitude, or infamous in its nature."

The same doctrine in effect is stated in 5 Jones Comms. Ev. (2d Ed.) 4659, and where it is stated that, in quite a group of states, statutes provide that the witness may be required to answer as to a conviction of a felony; that statutes in other states provide for, or are interpreted to extend to, allowing cross-examination as to convictions for all grades of offenses, including misdemeanors; and that in other states the wording or interpretation is such that conviction only for crimes involving moral turpitude may be brought out. Our Statute, Comp. Laws Utah 1917, § 7141, which provides that "a witness must answer as to the fact of his previous conviction for felony," falls, as we think, within the first-stated group. In the same volume of Jones Comms. Ev., at page 4656, the author further states that, by the weight of authority, it is improper cross-examination to ask the witness whether he has ever been arrested, or charged, or indicted for crime, and that the inquiry must be as to a conviction. In support thereof, the author cites numerous cases from twenty or more different jurisdictions. The reasons for the rule are apparent, and are stated by the author and in the cases cited by him. Such, too, is the general rule. A case here and there may be found to the contrary, but based, as we believe, upon neither logic nor legal relevancy. We prefer to follow the general rule as we did in State v. Thorne, 39 Utah 208, 117 P. 58. And there is judicial authority, Ford v. State, 106 Neb. 439, 184

N. W. 70, to the effect that a witness may not be cross-examined as to a plea of guilt in another case to affect credibility, since such does not show a conviction of a crime, but merely an arrest and a plea of guilty thereto, and that the entry of a plea of guilty without judgment or sentence is not a conviction.

In each instance the language of the statute must be considered. Statutes of some of the states, of which the statute of Connecticut is an example, provide that a "conviction of crime" may be shown to affect the credit of the witness. Under such statutes, some courts have construed the word "crime" to include felonies and all misdemeanors. Other courts have construed the word to include felonies and only such misdemeanors as involve moral turpitude or depravity or are infamous in their nature. We have no such statute that a "conviction of crime" may be shown to affect credibility of a witness. Cases from jurisdictions having such or a similar statute are thus of no persuasive effect. In some jurisdictions where there is no statute, the rule obtains that a conviction of a felony or other crime not amounting to a felony, but involving moral turpitude or depravity, or infamous in its nature may be shown to affect credibility, and in a few states, though greatly in the minority, the conviction of any kind of a misdemeanor. The cases on the subject are noted in the authorities heretofore cited and in 28 R. C. L. 624, *Redsecker* v. *Wade,* 69 Or. 153, 134 P. 5, 138 P. 485, Ann. Cas. 1916A, 274, and *Morrison* v. *State,* 85 Tex. Cr. R. 20, 209 S. W. 742, 6 A. L. R. 1608.

In 6 Jones, Comms. Ev. (2d Ed.) 4856, the author discusses the test by which a crime may be regarded as infamous, or as involving moral turpitude. In considering it, he referes to *Drazen* v. *New Haven Taxicab Co.,* 95 Conn. 500, 111 A. 861, 863, as a well-considered case on the subject, and where it is held that the great body of crimes called misdemeanors are not regarded as infamous crimes, for such crimes "have no inherent quality of baseness or depravity, and hence do not involve in their com-

mission moral turpitude." *In Ex parte Marshall*, 207 Ala. 566, 93 So. 471, 25 A. L. R. 338, it was held that making liquor does not involve moral turpitude. So too in *Posey* v. *Commonwealth*, 194 Ky. 483, 240 S. W. 91, where the offense was a liquor offense; *Garrison* v. *State*, 94 Tex. Cr. R. 541, 252 S. W. 511, where the offense was drunkenness in a public place; and *Shamblin* v. *State*, 88 Tex. Cr. R. 589, 228 S. W. 241, where the offense was drinking and exceeding a speed limit. So too as to other violations of regulations of intoxicating liquors. *Edenfield* v. *State*, 14 Ga. App. 401, 81 S. E. 253; *People* v. *Spain*, 157 Ill. App. 49; *Palmer* v. *Cedar Rapids, etc.*, 113 Iowa, 442, 85 N. W. 756; *Hightower* v. *State*, 60 Tex. Cr. R. 109, 131 S. W. 324.

Let it be assumed that some violations of liquor laws, though only misdemeanors, may involve moral turpitude. One of the previous convictions of the defendant permitted to be shown was a mere "possession of intoxicating liquor." The circumstances were not, and of course were not proper to be, shown. Under our statute all liquids and beverages containing in excess of one-half of 1 per cent of alcohol by volume are deemed spirituous and intoxicating liquors, and any person knowingly having intoxicating liquor in his possession in this state is guilty of a misdemeanor. Though one be convicted of knowingly having in his possession apple cider or other fermented juices containing in excess of one-half of 1 per cent of alcohol, or a flask of whiskey or brandy in his medicine chest or otherwise in his possession, and though such acts, under the statute, are unlawful and misdemeanors, yet it is difficult to perceive how such acts may be regarded as involving baseness, depravity, infamy, or moral turpitude, or as affecting credibility, or as rendering such a person less liable to speak the truth. We are not disposed to carry the doctrine to any such extent, even though the statute, had not restricted the inquiry to a conviction of a felony.

However, as the offenses here inquired about were misdemeanors and not felonies, we are not so much concerned

with that, since our statute restricts the inquiry to a conviction of a felony. We therefore are of the opinion that error was committed in permitting the cross-examination referred to, and in permitting the state to read in evidence the records of the city court to show convictions or pleas of guilty of the misdemeanors referred to. In view of such holding, it is unnecessary to consider the further rulings in not permitting the defendant to show that the pleas in such cases were entered not by him in person, or in his presence, or as to the effect of pleas entered by his counsel in the defendant's absence.

The contention made that, when a defendant in a criminal action offers himself as a witness, the rule admitting evidence or permitting cross-examination to affect credibility, is, in such particular, broader than in case of an ordinary witness, is so well settled to the contrary ▉ as not to admit of much legal controversy. The rule is general unless otherwise provided by statute (1 Wharton, Criminal Evidence [10th Ed.] p. 903), and it is the rule in this jurisdiction (*State* v. *Thorne,* supra), that an accused becoming a witness may be cross-examined the same as any other witness and that the same rule applies to the one as to the other. That, too, is the effect of our statute (Comp. Laws Utah 1917, § 9276). In other words, matter offered merely to affect credibility, if improper on cross-examination to be inquired about as to an ordinary witness, is also improper as to the accused.

But, further and aside from all this, the evidence respecting such previous convictions was offered and admitted, not only as affecting credibility, but also to show the habits of the defendant and as bearing on the probability that he was under the influence of intoxicating liquor at the time of the accident. That, we think, is indefensible. The evidence having been offered and received for both purposes, it is just as likely that the jury, unless instructed to the contrary, which they were not, considered the evidence for both purposes.

There is another question presented which, on a retrial, may again arise. There was a controversy as to whether the automobile driven by the defendant struck the deceased or whether the deceased was struck by an automobile driven by another. To show that the deceased was struck by the automobile driven by defendant, the chief of police was called to show that the defendant, among other things, on the 26th of December, two days after the accident, made to him oral admissions or a confession on the subject to the effect that the defendant did not see the deceased, nor those with the deceased, until the defendant was about four feet from them, and "then ran into them." Before eliciting the testimony as to the admissions or confession, the chief, in response to questions propounded to him by the district attorney, testified that the statements were made voluntarily by the defendant and without any promise of immunity or inducement held out, or the making of any threats. When thereupon the state sought to have the chief testify as to the admissions or confession, counsel for defendant at his request was given opportunity to first cross-examine the chief as to his testimony that the admissions were voluntarily made. Among other things, it was shown that the defendant, on the night of December 24th, was arrested without a warrant and confined in the city jail until the 26th, when he, from the jail, at the request of the chief, by another officer, was brought to the chief's office to be interviewed concerning the happening of the accident, and that the defendant's going there for such purpose was not in any sense voluntary on his part. In connection therewith, questions were propounded to the chief by counsel for the defendant, if the defendant and his father, and his counsel, on the night of the 24th, and on the day of the 25th, had not offered to give bail for the defendant's release, and if the chief had not refused to have the defendant admitted to bail or to have him taken to a magistrate or to the bail commissioner to have bail fixed and the defendant released on

bail, until the chief first had opportunity to interview him respecting the accident. Objections by the state to all such questions were sustained.

It is the contention of counsel for the defendant that such inquiries had a bearing on the question as to whether whatever statements may have been made by the defendant were made voluntarily and as to whether or not they were made to obtain his release on bail and hence were proper cross-examination as to the testimony given by the chief that the statements were made freely and voluntarily. The court ruled that the defendant was permitted fully to inquire into all of the immediate circumstances or conditions under which the admissions or confession was made, and as to whatever conversations then had between the defendant and the chief, but that the sought inquiries had no pertinency thereto or in determining the question then before the court, the admissibility of the claimed admissions or confession, but that the defendant on the regular cross-examination of the witness would be given opportunity to then go into such matters.

The chief then was further cross-examined as to what he "meant that no threats or promises were made" and answered that he "meant just what he said," and that "no such remarks were alluded to." Then he was asked if as a matter of fact there was not something stated by him and by some of the police that the defendant could not get out of jail until some one had a conversation with him, to which the chief answered that there was no such conversation had at any time. He was then asked, "Why, then, was the defendant held from December 24th until the 26th without bail?" To that the state again interposed an objection, which was sustained.

Following that, counsel for the defendant, at his request and also at his request that the testimony be given in the absence of the jury, was permitted to give the testimony of the defendant and of his father on the subject before the court. They, in substance, tesified that they were able

to give bail; that they, on the night of the 24th and on the next day, offered to give bail, and that the chief refused to have the defendant admitted to bail until he had had an opportunity to talk with him concerning the accident. The defendant further testified that, when he was taken to the chief's office to be interviewed he asked that his counsel or his father be present, and that the request was denied; that the chief then told him, "I want to do the right thing and don't want you to get into any more trouble than is necessary," that he "would do what he could to help, and wouldn't do anything that would injure me in any way, and that he would do what he could for me." The defendant further testified that from what the chief said "I drew the conclusion that if I talked to him he would release me from the jail. I felt that I would get some attention if I would say something," and that the chief then asked him questions and he answered them. The jury was thereupon recalled, and the testimony of the chief as to the admissions or confession given in evidence over the objection of the defendant.

Complaint is made of the rulings referred to and admitting the admissions or confession in evidence. We think the questions propounded to the chief well might have been permitted to be answered. The court evidently took the view that the fact, if it were a fact, that the chief wrongfully refused bail had not anything to do with the question of whether what the defendant stated to the chief was or was not voluntarily or freely stated. That would be true if what was stated was voluntarily and freely stated, notwithstanding the defendant was wrongfully denied bail, or confined without bail longer than was necessary, or illegally confined, even though the motive was to obtain an interview with the defendant before he was released. But the fact, if it were a fact, that the defendant was denied bail until an interview was had with him, had a bearing on the question of whether the statements made by him were voluntarily or involuntarily made, especially if coupled with

further proof that the statements were made to obtain his release on bail. While such fact may not, in and of itself, establish that the admission or confession was involuntary so as to render the admissions or confession inadmissible, nevertheless it had a legitimate and relevant bearing on the question of whether the statements made were or were not made voluntarily. The chief, in his direct examination, having testified that they were voluntarily made, we think the inquiries in the main were proper cross-examination on that subject.

However, since the chief, after much wrangle between counsel, was finally permitted to answer, in effect at least, that not anything was said concerning the subject that the defendant would not be released on bail until an opportunity was afforded to have a conversation with him, we think these rulings harmless. And as the evidence before the court concerning the subject of whether the admissions or confession was or was not voluntary was in conflict, we think no error was committed in admitting the admissions or confession in evidence. While the chief did not specifically deny the testimony of the defendant as to what the chief told him at the time of the interview, yet the general effect of the chief's testimony was a denial of it.

There is still another question presented. A demurrer was interposed to the information, and was sustained. The court thereupon gave the district attorney leave to file an amended information, which was done. It is not contended that the amended information was not germane to the original information, or that a new or different offense was charged by the amended information. It is urged by the defendant that the district attorney was not authorized to file an amended information, unless the court "directed" an amended information to be filed, and that merely to grant "leave" to file an amended information was not sufficient to authorize the district attorney to do so. In support of that the case of *State ex rel.* v. *District Court,*

36 Utah 397, 104 P. 282, is cited. That case was decided in 1909 under a statute different from the present statute on the subject. The statute, in the claimed particular, was amended in 1913. Comp. Laws Utah 1917, § 8781. By such amendment it is provided that "an information may be amended without leave of court in any matter of form or substance at any time before the defendant pleads thereto. It may also be amended in any matter of form or substance by leave of court at any time after the defendant has pleaded to the merits, or during the trial." Under such a statute we think the district attorney was authorized with only "leave," and without express "direction," of the court to file a proper amended information. *State* v. *Rickenberg*, 58 Utah 270, 198 P. 767. The defendant entered his plea of not guilty to the amended information without claiming surprise, or as being unprepared to go on with the case, and without in any particular challenging the amended information, until ten days after the plea was entered, and entering upon the trial of the case, when a motion to quash the amended information was made, and later by a motion in arrest of judgment, both motions being based entirely on the ground that the district attorney was not authorized to file the amended information because the court had not expressly "directed" him to do so. We think no error was committed in overruling the motions.

Some of the testimony given on behalf of the defendant before the court in the absence of the jury on the subject of whether the admissions or confession was voluntarily made was later given to the jury. Upon the record presented by appellant, without an index to either the transcript or the abstract, and otherwise not with the care required to indicate where matters complained of may be found in the record, it is difficult to determine whether all such testimony so given only before the court was also given to the jury. We think, however, enough was presented to the jury to require a submission of the matter to them with proper instructions. That was not done. The

defendant requested the court to charge in effect that "oral statements made by a defendant under arrest or in jail, or in custody, should be received and considered by the jury with great caution," and that "experience fears that the same may be induced by hope of reward or fear of punishment, or that those interested in the prosecution of the defendant may not have fairly reproduced, obtained, or presented what was said by him."

A further request was made that the jury be instructed that "before any admission made by the defendant while under arrest, in jail, or in custody should be █ considered by you, you must be convinced that said admission was made freely and voluntarily by the defendant without the slightest hope of benefit or the remotest fear of injury."

Another request that "confessions or admissions are prima facie involuntary and it must be satisfactorily shown to you that they are voluntary. That is, that they were made when the mind of the accused was free from influence █ of hope, or fear before they can be received by you, and any hope excited by encouragement that the defendant would be more favorably dealt with if he confessed, or made a statement, is sufficent for you to exclude them, and this is true not only to confessions but to inculpatory admissions in the nature of confessions, that is, directly relating to the facts or circumstances of the crime or tending to connect the defendant therewith."

In view of the conflict in the evidence on the subject as to whether the admissions or confession was voluntary, we think a proper instruction on the subject ought to have been given the jury. The rule in such respect is █ fully stated in *State* v. *Wells*, 35 Utah 400, 100P. 681, 683, 136 Am. St. Rep. 1059, 19 Am. Cas. 631. After reviewing the authorities on the subject, the rule is there stated:

"We are therefore of the opinion that, when evidence of the defendant's confession is offered by the state, it, on the defendant's objection, must first introduce some evidence tending to show that the

confession was voluntary; that it is alone within the province of the court to determine, not whether the confession was or was not voluntary, but whether a sufficient prima facie showing, with respect to its voluntariness is made to warrant a finding that it was voluntary; that, before the court rules upon the question, the privilege should be given the defendant, if he requests it, to cross-examine the witness, or witnesses, by whom the state seeks to show the voluntariness of the confession; that when such a showing has been made, and the court determines that it is prima facie sufficient to authorize such a finding, then the court should admit the confession itself in evidence, otherwise not; that when the state has made such prima facie showing one which primarily tends to show that the confession was voluntary, the defendant may not, as matter of right, and before the confession itself is admitted, then offer evidence to dispute or contradict the preliminary testimony offered, but may do so afterwards; and that, when the evidence is conflicting, or is open to different inferences, the question of voluntariness should be left to the determination of the jury, like every other question of fact, under instructions to wholly disregard the evidence of the confession, unless the jury are convinced and find, upon all the evidence adduced, that it was voluntary."

The subject is also considered in *State* v. *Hutchings*, 30 Utah 319, 84 P. 893, *State* v. *Sirmay*, 40 Utah 525, 122 P. 748, and *State* v. *Romeo*, 42 Utah 46, 128 P. 530.

The substance of the requests in some particulars might well have been given but that was so mingled with other particulars requested which were merely argumentative, and for that reason the requests were properly refused. *State* v. *Romeo*, supra. We are also somewhat led to this conclusion because it is not clear that the substance of the testimony adduced by the defendant before the court with respect to the question of whether the admissions or confession was made voluntarily was fully put before the jury. However, in view of the decisions of this court, we think no difficulty on a retrial will be found in properly directing the jury on the subject.

For the reasons heretofore given, we are of the opinion that the judgment should be reversed, and the case remanded for a new trial. Such is the order.

ELIAS HANSEN and EPHRAIM HANSON, JJ., concur.

FOLLAND, J. (dissenting).

I dissent. As I view the evidence, no error was committed by the trial court in submitting to the jury the question of whether defendant was under the influence of intoxicating liquor at the time of the accident. The deceased was fatally injured by having been run into and knocked down by an automobile at about 7:15 in the evening. The chief of police saw the defendant at his home at about 10 o'clock or a little later the same night. The chief testified that at this time he detected a strong odor of liquor on the breath of defendant. It is said in the prevailing opinion that this is all the evidence pointed to as showing that the defendant was under the influence of liquor at the time of the accident. I do not agree to that. There was the conduct of the defendant immediately prior, at the time, and shortly after the accident to be taken into consideration in connection with the odor of liquor, etc. When all this is considered, I think there was sufficient from which the jury might find that defendant was under the influence of intoxicating liquor. There was convincing evidence to the effect that a group of five people were, at about 7:15 p. m. on December 24, 1928, walking across the intersection of Fourth South and Second East streets in Salt Lake City. They were crossing from south to north on the east side of Second East and had reached a point approximately 15 feet from the north curb line of Fourth South when an automobile headed east, and driving on the north side of the street, at 40 miles per hour, crashed into this group, killing two of the persons and wounding another. A baby was being carried in the arms of its mother at the time of the accident. This baby was hurtled from its mother's arms through the windshield of the car and into the driver's seat and carried away. The car did not stop or even slacken its speed on account of the accident. The baby was later found at the home of the defendant, to which place it had been carried by him in the automobile he had been driving. Defendant did not report the accident to the police station nor take the baby, which was bleeding and

dying, either to the station or the emergency hospital or any public place, but took it to his home. Defendant's wife was working in town, and left her employment at 7:30 p. m. She reached home shortly after 8 o'clock. Upon arriving there, she found her husband with the strange baby. The wife immediately called the father of the defendant, who came to the house, and the father immediately thereafter called the chief of police at his home. The chief responded by coming promptly to defendant's home. Upon finding the baby there, the chief took it at once to the emergency hospital and then returned. With respect to his second visit, which was about 10 o'clock or shortly thereafter, the chief testified:

"Q. Did you meet the defendant on that visit? A. I did.

"Q. Did you have any conversation with him? A. Some little, not very much that evening.

"Q. Will you state the conversation, or anything he said to you or you said to him about this accident? A. I asked him about the accident, but he did not seem to know a great deal about it at the time.

"Q. Did he say he did not? A. He did not say that he did not. I did not talk with him but just a few moments and turned him over to Officer Taylor, who took him to the police station. * * *

"Q. What did you ask the defendant about the accident? A. I asked him where the trouble happened, and he just simply shook his head, he did not seem to want to talk very much. He was very much excited.

"Q. In what condition was the defendant at the time? A. He had a considerable odor of liquor on his breath."

The defendant was taken to the city jail, where he remained until some time during the day of the 26th when he was brought into the chief's office for conversation with the chief. With respect to this conversation, the chief testified:

"A. I told Mr. Johnson that I thought his mind was a little more clear on that day than it was before and I would like to have him tell me if he would all that he remembered about the accident. He hesitated for a second. Finally he told me."

Then follows the statement of defendant. During this conversation the chief had asked him if he had been drinking, to which defendant made no reply. This presents a rather

clear picture of the condition the defendant was in at the time the chief saw him on the evening of the accident, and bears upon the question of his being under the influence of liquor. But this is not all. It was competent for the jury to consider, as bearing upon this question, the defendant's conduct at and about the time of the accident. The only serious question in the case was in regard to the identity of the person causing the accident. Defendant denied he was the driver of the death car. His identity was established by circumstances. On the evening in question, he was driving a Hudson coach automobile belonging to his father. Testimony of eye-witnesses establish that immediately prior to the accident a Hudson coach was seen to drive through the red light at State street at its intersection with Fourth South, traveling easterly; that this car was going at a high rate of speed; that, instead of stopping for the red light at the intersection, it continued into the intersection, slowed or stopped in order to avoid a collision with a south traveling car, and then speeded up continuing easterly; that it swung over to the north side of Fourth South street and continued traveling at 40 miles per hour north of the center line of the street until after the collision with the people crossing that intersection. Another witness testified that he was traveling easterly on Fourth South street between State and Second East when a Hudson car running 40 miles per hour passed him, and he saw this car drive into the group of people at the intersection of Second East; that it did not stop, but continued on the north side of the street until it reached a point about 50 feet east of the intersection and then turned to the right-hand side of the street and continued easterly at a high rate of speed, disappearing in the darkness. This witness attempted to follow the car, but could not catch up with it. The baby which defendant had in his car had been hurt, was bleeding and vomiting. Defendant claimed he picked this baby up on the street between Second and Third East on Fourth South street. The right half of the windshield of defendant's car was com-

pletely shattered and broken out. It was the theory of the state that the baby was hurtled from its mother's arms through the windshield into the front seat of defendant's automobile. There were evidences of blood and of vomit on this front seat. Instead of taking the child to the hospital, defendant took it home, and was there with the child when his wife returned at about 8 o'clock. The whole of the evidence, it seems to me, is sufficient to establish the charge of driving while under the influence of intoxicating liquor. Here we have high speed, running through a red light, use of the wrong side of the road, crashing into a group of five people at the intersection, not stopping after the tragedy, and the carrying of an injured, bleeding, and dying baby to his own home instead of to a hospital or police station. It may be that any one of these incidents standing by itself is not sufficient to furnish a basis for the charge of driving while under the influence of liquor, but, when taken altogether, with the evidence of the chief as to defendant's condition after the accident, they speak with cumulative effect that the defendant was in such a condition as impaired to some extent his ability to operate an automobile in a proper and reasonable manner, and that this condition was produced by intoxicating liquor. The cases hold that the various circumstances with respect to the manner of driving an automobile may be considered, and from all the circumstances and evidence the jury may return a verdict of guilty. *State* v. *Giles,* 200 Iowa 1232, 206 N. W. 133, 42 A. L. R. 1496. In that case the verdict of guilty was sustained, though the evidence was not nearly so strong as in the instant case and no accident or injury to any one resulted. *Nail* v. *State,* 33 Okl. Cr. R. 100, 242 P. 270, where it was held that evidence of defendant's condition as to intoxication eight hours after the accident was competent, though remote, and that "the remoteness in point of time goes rather to its weight than to its admissibility." *Commonwealth* v. *Lyseth,* 250 Mass. 555, 146 N. E. 18, where the breath of defendant carried an odor of liquor about half an hour after the acci-

dent. *State* v. *Fitzpatrick* (Mo. Sup.) 267 S. W. 905. *People* v. *Ekstromer,* 71 Cal. App. 239, 235 P. 69, 71.

The question under this assignment is raised in two ways: (1) By objection to the chief's testimony that he detected the odor of liquor on defendant's breath. From what I have said and the cases referred to, it would seem that the court was right in not excluding this testimony. The question is further raised by a request of defendant to instruct the jury as follows: "You are further instructed, gentlemen of the jury, that there is not sufficient evidence in this case to warrant your holding that Monta D. Johnson, the defendant, was intoxicated or under the influence of intoxicating liquor at the time of the accident."

This request was properly refused, not only for the reasons indicated above, but also because it included the word "intoxicated." Neither the statute nor the charge in the information uses the word "intoxicated," but merely operation of a motor vehicle "while under the influence of intoxicating liquor." This language has been construed to mean "that if intoxicating liquor has so far affected the nervous system, brain, or muscles of the driver of an automobile as to impair, to an appreciable degree, his ability to operate his car in the manner that an ordinarily prudent and cautious man, in the full possession of his faculties, using reasonable care would operate or drive a similar vehicle under like conditions, then such driver is 'under the influence of intoxicating liquor' within the meaning of the stattue." *People* v. *Ekstromer,* supra; *People* v. *Dingle,* 56 Cal. App. 445, 205 P. 705.

There was ample evidence to sustain a conviction as to the other unlawful acts alleged, and, where defendant is charged with two or more unlawful acts in the operation of his automobile, proof of either one proximately causing the injury will sustain a conviction. *Smith* v. *State,* 186 Ind. 252, 115 N. E. 943.

The question as to whether or not a conviction for violation of the liquor law under a city ordinance may be proven

as affecting credibility is presented for the first time in this state. Notwithstanding a conflict of authority, I am inclined to the view that under our statutes this may be shown. In this state, contrary to the holdings in many states, a violation of a city ordinance is criminal in character and similar to statutory misdemeanors. *Salt Lake City* v. *Robinson*, 39 Utah 260, 116 P. 442, 35 L. R. A. (N. S.) 610, Ann. Cas. 1913E, 61. The offenses inquired about were also crimes under the state law, although the prosecutions were had in the city court for violation of city ordinances and are thus admissible where conviction for crime may be shown. *Strickland* v. *State* (Okl. Sup.) 284 P. 651.

Comp. Laws Utah 1917, § 7122, provides that all persons, with certain stated exceptions, may be witnesses; that neither parties nor other persons who have an interest in the event of the action, nor persons who have been convicted of a crime, are excluded. It further provides that in every case the credibility of a witness "may be drawn in question, by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence," and that the jury are the exclusive judges of the credibility of the witness. This section has to do with competency of a witness and his credibility. The statute imposes no limitation with respect to examination or proof of former conviction of crime as touching credibility. It has been held that, where the statute permits the defendant to testify and no limit placed on the examination, he may be examined or proof may be introduced of former conviction for misdemeanors. *Commonwealth* v. *Racco*, 225 Pa. 113, 73 A. 1067, 133 Am. St. Rep. 872.

Comp. Laws Utah 1917, § 7141, is referred to as limiting the examination to conviction for felony. It is my view that this section has reference to the question of privilege and not to the question of competency. It provides that "a witness must answer questions legal and pertinent to the matter in issue, though his answer may establish a claim against

himself; but he need not give an answer which will have a tendency to subject him to punishment for felony.  *  *  * But a witness must answer as to the fact of his previous conviction for felony." There is no language in this section which restricts the examination as against any conduct which may subject the witness to prosecution for crime other than felony. The section gives the witness the right to claim the privilege of not answering if the answer will have a tendency to subject him to punishment for felony. It does not give him the right to claim the privilege as against questions which may subject him to punishment for other offenses. Notwithstanding the right to the privilege granted, he must still answer as to a previous conviction for felony. In a few states there are statutory provisions touching credibility which limits the examination to conviction for a felony. An illustration of this is section 2051 of the California Code of Civil Procedure, wherein it is provided "a witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony." The Utah statute contains no provision similar to this one. Section 7122 and section 7141, supra, of our statutes are practically identical with other sections of the California Code. In many states statutory provisions expressly permit examination as to conviction of crimes, including misdemeanors, for the purpose of affecting credibility.

Comp. Laws Utah 1917, § 9279 provides: "If a defendant offers himself as a witness, he may be cross-examined by the counsel for the state the same as any other witness." The defendant in this case chose to take the witness stand. He appeared then in the dual capacity of a witness and the defendant. As a defendant, his character is not subject to attack unless he places it in issue. He was not compelled to

testify. His neglect or refusal to be a witness could not prejudice him nor be used against him. However, when he took the stand, he subjected himself to all the tests which may be legally applied to any witness. He was not asked any question which called for an answer which might have a tendency to subject him to punishment for felony. He did not claim privilege as against the questions asked, nor did he refuse to answer. The questions of the district attorney on cross-examination were directed to whether he had been charged and convicted in the city court of drunkenness in one case and possession of intoxicating liquor in another. Defendant answered in the negative after objections by his counsel that the questions were incompetent, irrelevant, and immaterial. The district attorney then called the clerk of the city court, who produced the records of conviction. There were questions asked both by the district attorney and the attorney for the defense as to the arrest, appearances in court, and other details. The examination was allowed to go beyond the ordinary bounds. The rule is, as indicated in the prevailing opinion, that the witness may be asked as to a conviction and the name and kind of crime, but that the details or circumstances of it may not be inquired into. If the witness denies the conviction, he may be contradicted by the record of a court of competent jurisdiction showing conviction. It is also the rule that defendant may not go behind the record of conviction to impeach it as he undertook to do in this case. The defendant sought to show that the conviction was not valid because in one case the plea was entered by defendant's attorney in his absence, and in the other case that the proceedings were had in the chambers of the judge rather than in open court. In both cases there was consideration shown the defendant by the judge and prosecuting officers to which he was not legally entitled. I think he cannot take advantage of that here. The record of the judgment of conviction is conclusive for the purposes of this proceeding. 2 Wigmore on Evidence (2d Ed.) 361. *State* v. *Crawford,* 60 Utah 6, 206 P. 717.

Where the defendant is the witness, he may be asked whether or not he has been indicted or arrested or pleaded guilty to other offenses. 5 Jones Comms. on Evidence, 4652. In *People* v. *Larsen*, 10 Utah 143, 37 P. 258, defendant was on trial for rape. He took the witness stand and was asked, "Have you ever been arrested for a crime similar to this?" The question was objected to as incompetent, irrelevant, and immaterial, and the objection overruled. This court held no error was committed. It was pointed out that defendant did not claim the privilege afforded by law to refuse to answer, and that on cross-examination, in the absence of the claim of privilege, it was proper to ask the question as touching credibility; that the jury had the right "to know and understand the character and conduct of the witness whose statements they were called upon to believe." And also "it rests within the sound discretion of the trial court to determine the limits to which a cross-examination, in a criminal case, may be conducted, on matter not relevant to the issue, for the purpose of judging the character of the witness, and the credit which ought to be given to his testimony from his own voluntary admissions." This is reaffirmed in *State* v. *Williams*, 49 Utah 320, 163 P. 1104.

It is everywhere conceded that convictions of crime are admissible to affect credibility. "The tendency is to a simplicity of the rule defining the kinds of crime (i. e. either all crimes, or felonies only) instead of the common-law subtlties." 2 Wigmore (2d. Ed.) 413. But where the statute does not draw the line and limit the evidence to felonies, the tendency is to include all crimes. This is indicated in the note in 6 A. L. R. 1635, wherein it is said: "Even in the absence of a statutory enactment, it is generally held proper to show on the cross-examination of the accused, that he has previously been convicted of crime, for the purpose of lessening his credibility."

Many cases are cited, including violations of liquor laws. See, also, continuation of same subject in 25 A. L. R. 346.

There has been a trend in the modern cases in favor of the

proposition that conviction for violation of liquor laws has a tendency to affect credibility. Such offenses are held by many courts to involve moral turpitude, and in reason this ought to be true. The drift of legislation, both in this state and nation, over a long period of time, has been to curtail, restrict, and finally to eliminate by prohibitory law and constitutional amendment the admitted evils incident to the traffic and use of intoxicating liquor. I know of no better test of conduct as to its moral quality than to determine whether society, through its lawmaking machinery, has deliberately condemned and prohibited such conduct. Traffic in, possession of, and use of intoxicating liquor has been condemned and penalized by the most solemn and decisive methods known to our governmental system, that of constitutional enactment. I think the courts are bound to take cognizance of this change and to act with relation thereto. The rules of evidence are practical rules growing out of experience and intended to be adapted to the growing and changing conditions of human conduct. It requires no stretch of the imagination to say that under these changed conditions violations of the liquor law involve moral turpitude, and that evidence of convictions for violation of such laws is proper to affect the credibility of witnesses when they undertake to testify in courts of justice. The following cases illustrate this trend:

*State* v. *Bieber,* 121 Kan. 536, 247 P. 875, 48 A. L. R. 252, where an attorney at law was disbarred because of conviction for having unlawful possession of intoxicating liquors, held to be a misdemeanor involving moral turpitude. *Kurtz* v. *Farrington,* 104 Conn. 257, 132 A. 540, 542, 48 A. L. R. 259. This court, departing from a previous contrary decision, held the credibility of the witness was affected by conviction for violation of the National Prohibition Act (27 USCA). It was held to involve moral turpitude. The court said:

"Courts will not look at violations of that law with easy disregard of the baseness of the act, the unchecked effect of which is fraught

with so serious a public evil, and is so destructive of the people's regard for the law of the land. Crimes of this character are not ordinary crimes. They are violations of those duties which every citizen owes to society of which he is a part, and the country of which he is a part. Citizens who disregard those high obligations, and are convicted in the courts of their own country or state, are not on a par with loyal citizens. Their offenses involve moral turpitude, and, if the other condition is present—the penalty of imprisonment which may be six months or more—they are guilty of a crime which the law denominates as infamous, and the record of conviction becomes admissible to affect their credibility as witnesses in the courts, under the provisions of General Statutes, section 5705."

*State* v. *Edmunson*, 103 Or. 243, 204 P. 619, wherein it was said that the sale of intoxicating liquor contrary to the prohibitory law is a crime involving moral turpitude, which, with other offenses, was held sufficient to warrant disbarment of an attorney. *In re Bartos* (D. C.) 13 F. (2d) 138; *Fields* v. *United States* (C. C. A.) 221 F. 242; *State* v. *Pfefferle*, 36 Kan. 90, 12 P. 406; *Hendrix* v. *State*, 4 Okl. Cr. 611, 113 P. 244; *Rudolph* v. *United States ex rel. Rock*, 55 App. D. C. 362, 6 F. (2d) 487, 40 A. L. R. 1042.

Even if I am wrong in my view that evidence of former convictions of liquor law violations are admissible, still I think there should be no reversal of this case. The evidence is strong and convincing that the accident resulting in death of the deceased was caused by the defendant in doing one or more of the unlawful acts specified in the information. The story told by the defendant in explanation of how he happened to be in possession of the baby and why he took it home instead of to the police station is wholly incredible. I see no prejudice to any substantial right of the defendant in inquiring about the city court cases, even assuming that to have been erroneous. Such error in this case should be held to be harmless under Comp. Laws Utah 1917, § 9231. This court in a number of cases has laid down the rule with respect to this matter. It is well stated in the case of *State* v. *Woods*, 62 Utah 397, 220 P. 215, 222, as follows:

"As we view it, in order to hold an error harmless, this court should be satisfied that, in the absence of the errors complained of, the verdict of the jury should not have been different, and that as reasonable men, under the evidence, they ought not to have found any other verdict than that of guilty. The above may be said to be the general rule that has been well established in this jurisdiction, and particularly since the amendment of 1915 relating to the practice and procedure in criminal cases."

After a careful reading of this record, I am statisfied that, in view of the convincing evidence of defendant's guilt, the admission of the evidence of conviction in the city court, if it be error, does not warrant a reversal of the judgment. "Without the objectionable evidence, the verdict must have been the same." *State* v. *Cox* (Utah) 277 P. 972, 973.

CHERRY, C. J.

I concur in the views expressed by Mr. Justice FOLLAND in his dissenting opinion.