[Civ. No. 1260. Fourth Appellate District.—July 24, 1933.]

MRS. J. TOMLINSON, Guardian ad Litem, etc., Appellant, v. ARMEN KIRAMIDJIAN et al., Respondents.

Harry A. Wishard for Appellant.

Conley, Conley & Conley for Respondents.

TURRENTINE, J., *pro tem.*—Plaintiff, as guardian *ad litem* of Betty Daslyne Brown, a minor, brought suit against defendants for damages arising out of the death of the father of the minor, who was killed while riding in an automobile as the guest of the defendants. George Christian was operating the automobile with the consent of defendant Kiramidjian, the owner. The cause was tried before a jury, which rendered a verdict for the plaintiff. Prior to submitting the matter to the jury, defendants moved for a directed verdict. This motion was denied. After verdict, and before entry of the judgment, motion was made to vacate and set aside the verdict of the jury and enter a judgment for defendants notwithstanding the verdict. The motion for judgment notwithstanding the verdict was made in the alternative form asking therefor, and reserving, if that be denied, the right to apply for a new trial. On motion for new trial judgment on the verdict was set aside and judg-

ment notwithstanding the verdict was made and entered for the defendants. Plaintiff appeals from such judgment.

The motion for a directed verdict and motion for judgment notwithstanding the verdict were made on the ground of the insufficiency of the evidence to justify the verdict "because it appears from the whole evidence in the case that the negligence of the deceased, plaintiff's ancestor, proximately contributed to his death".

It appears from the evidence that at about 1 o'clock on the afternoon of August 25, 1930, the deceased met defendants and served them with beer; that the three of them drank a couple of bottles apiece between that time and 3 o'clock. At about 3 o'clock defendants left in an automobile and drove to a place about two miles distant. The deceased did not go with them. Upon arrival they drank more beer, returning about 4 o'clock, where they again joined deceased. It does not appear that deceased knew of their drinking at this other place. All three again drank beer, either a glass or a bottle apiece. They also had lunch. At about 5 o'clock they left for deceased's home, the defendant Christian driving, with all three sitting in the front seat. Christian drove some distance and at the request of deceased stopped at a place, where he got two bottles of beer, putting them in the car. While there they each drank another glass. They re-entered the automobile with the same seating arrangement, Christian driving, and did not stop again until the accident occurred. On passing an automobile, Christian, while driving between fifty-five and sixty miles an hour, turned and waved his hand at the occupants of the other car. While he was so engaged the automobile he was driving swerved onto the left-hand side of the road, he glanced forward, turned it back to the right, it went off the highway and overturned, causing the death of deceased. The car was going about fifty-five miles an hour at the time of the accident.

The defendant Kiramidjian gave the following testimony: "Q. Now, was Christian driving a little fast at any time prior to the accident? A. I don't know—at certain times. Q. Did Mr. Brown say anything to you or to Mr. Christian about his driving? A. He did once, he made a remark. Q. What did he say? A. Well, he told me—he asked me to take the wheel. He said if I didn't he thought Mr. Chris-

tian would kill us before we got home. Q. What was your answer to him? A. I told him, 'Our lives are not any better than his,' so we were feeling pretty good and we didn't care. We told Christian to slow up. Q. I will ask you if you said this to him after Mr. Brown told you to have him slow down, you said, 'What the hell?—your life is no better than his, sit where you are'? Is that what you said? . . . A. Yes, sir.'' Whether this was before or after Brown got out of the automobile to get the two bottles of beer does not appear. When Kiramidjian was asked whether Christian's actions on the day of the accident were different than on any other day when he had not been drinking, he replied: ''Well, it has some effects on a fellow, he was feeling pretty good. Q. You had been with Mr. Christian on numerous occasions when he had not been drinking liquor? A. Yes. Q. Was there any difference in his actions this day than the days when you were with him when he had not been drinking? . . . A. No. Q. What condition was Mr. Christian in just prior to getting in and driving the car relative to his stability? A. Well, he seemed all right to me. Q. He looked like he was able to drive your car did he? A. Yes. Q. Just state what you saw, what he did? A. He was feeling all right, he was feeling happy. He wasn't staggering or anything. He looked all right.''

The defendant Christian, when called as a witness, gave substantially the same story as Kiramidjian and when asked whether he felt any different on the day of the accident than on other days, answered, ''Oh, yes, why sure, I felt better because I had been drinking beer. I felt happy and things like that. You are bound to feel different. I wasn't intoxicated, I had been drinking beer but not intoxicated.''

Over plaintiff's objection a traffic officer who came on the scene shortly after the accident and saw the physical conditions surrounding the accident and smelled liquor, testified that he ''thought it was a drunken party''. He heard one of the defendants talk, did not know which one it was, but thought it was Christian. Some broken bottles were found at the scene of the accident. The three witnesses whose evidence we have reviewed were the only ones who testified as to what happened before or after the accident in respect to the drinking and condition of defendants and of the deceased.

From these facts we feel that it was a question for the jury to determine, under proper instructions, (a) whether the defendant Christian was drunk or under the influence of intoxicating liquor as defined in *People* v. *Ekstromer*, 71 Cal. App. 239, 246 [235 Pac. 69], and whether, if drunk, or under the influence of intoxicating liquor, that this was the proximate cause of the accident, (b) whether the deceased knew, or should have known, that defendant Christian was under the influence of intoxicating liquor when he last started to ride with him, and, (c) whether the turning to wave at the passengers of the passing automobile while traveling at an excessive rate of speed was gross negligence, and whether such gross negligence, if so found, was the proximate cause of the accident. (*Krause* v. *Rarity*, 210 Cal. 644-655 [293 Pac. 62, 77 A. L. R. 1327].) From evidence that a person had been drinking intoxicating liquor and thereafter drives his car in a negligent manner, it does not follow as a matter of law that he was driving while under the influence of intoxicating liquor. There is no evidence in the record from which it can be said as a matter of law that deceased knew, or should have known, that Christian was under the influence of intoxicating liquor before he entered the automobile the last time, or that after discovering his intoxicated condition he had a clear chance to leave the automobile at a safe place. This clearly distinguishes the present case from *Hirsch* v. *D'Autremont, ante,* p. 106 [23 Pac. (2d) 1066].

The trial court has power to enter a judgment notwithstanding the verdict when it could and should have in the first instance directed a verdict (Code Civ. Proc., sec. 629), and the court's right to direct a verdict is "absolutely the same as the right to grant a nonsuit". (*Perera* v. *Panama-Pacific International Exposition Co.,* 179 Cal. 63 [175 Pac. 454, 455].) Applying these rules to the facts and to the conclusions which we have drawn therefrom, we are of the opinion that the trial court did not have the right to determine from the whole evidence that a verdict for the defendants should have been directed in the first instance, and therefore did not have a right to enter a judgment notwithstanding the verdict.

It is urged that a reversal of this case results in a final judgment for plaintiff. This is not the law. Upon a

reversal of the case, and judgment on the verdict being entered, the defendants ·have a right to file a motion for new trial, if they so desire, and the trial court shall pass upon said motion as if made in the first instance, if made in the manner and within the time required by law, after notice of entry of the judgment as herein ordered.

The judgment is reversed. It is directed that judgment upon the verdict be entered.

Barnard, P. J., and Marks, concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 21, 1933.