548

[Crim. No. 2842.   Second Appellate District, Division One.—June 12, 1936.]

THE PEOPLE, Respondent, v. GILLIS (PAT) SMITH, Appellant.

Barry Sullivan for Appellant.

U. S. Webb, Attorney-General, and Paul D. McCormick, Deputy Attorney-General for Respondent.

YORK, J.—Defendant was charged in an information with violation of section 501 of the Vehicle Code, was tried before the court sitting without a jury, and was found guilty, as charged. Appellant's opening brief raises nothing more than a request that this court weigh the evidence. We have made an examination of the evidence introduced and find it sufficient to justify the judgment of the trial court.

The judgment of conviction is affirmed.

Doran, J., concurred.

HOUSER, P. J., Dissenting.—I dissent. Defendant was accused of the commission by him "of the crime of violation of section 501, Vehicle Code", in that, on a specified date, he drove an automobile "while under the influence of intoxi-

cating liquor, and in an unlawful manner, causing bodily injury to one Esther Lang, a human being''.

As far as here is material, section 501 of the Vehicle Code provides as follows:

''Any person who, while under the influence of intoxicating liquor, drives a vehicle and when so driving does any act forbidden by law or neglects any duty imposed by law in the driving of such vehicle, which act or neglect proximately causes bodily injury to any person, is guilty of a felony . . .''

It thus may be noted that one of the elements necessary to a conviction of the offense of which defendant was accused is that a defendant who is charged therewith must have been ''under the influence of intoxicating liquor'' at the time when the alleged offense was committed. In substance, that much is alleged. But in order that a judgment of conviction of such an offense may be sustained, it is indispensable that the evidence establish that particular fact. Just what was meant by the phrase, ''under the influence of intoxicating liquor'', as used in section 112 of the California Vehicle Act as it existed prior to the date when the said act was amended by the Statutes of 1935 (Stats. 1935, p. 93) was given careful consideration by the court in the case of *People* v. *Ekstromer,* 71 Cal. App. 239 [235 Pac. 69]. It was there held that ''if intoxicating liquor has so far affected the nervous system, brain or muscles of the driver of an automobile as to impair, to an appreciable degree, his ability to operate his car in the manner that an ordinarily prudent and cautious man, in the full possession of his faculties, using reasonable care, would operate or drive a similar vehicle under like conditions, then such driver is 'under the influence of intoxicating liquor' within the meaning of the statute''.

In the case of *People* v. *McKee,* 80 Cal. App. 200 [251 Pac. 675], it is said that '' 'under the influence of intoxicating liquors' means what common usage has ascribed to the word, to wit, not that he should be intoxicated to the extent that his faculties are completely impaired, but only that degree of influence which looses the bonds of self-restraint and causes him to operate his car in a manner different from that in which it would be operated by an ordinarily cautious and prudent person. (*People* v. *Dingle,* 56 Cal. App. 445 [205 Pac. 705].)''

To the same effect, see *Tomlinson* v. *Kiramidjian,* 133 Cal. App. 418, 422 [24 Pac. (2d) 559] ; *People* v. *Fellows,* 139 Cal. App. 337, 340 [34 Pac. (2d) 177] ; *People* v. *Aguilar,* 140 Cal. App. 87 [35 Pac. (2d) 137] ; *Tracy* v. *Brecht,* 3 Cal. App. (2d) 105, 112 [39 Pac. (2d) 498] ; *Lindeman* v. *San Joaquin C. O. Co.,* 5 Cal. (2d) 480 [55 Pac. (2d) 870].

A careful review of the evidence adduced on the trial of the action reveals *nothing,* either directly or indirectly, that would establish the required condition that at the time when the accident in question occurred, defendant was so far ''under the influence of intoxicating liquor'' that either his nervous system, brain or muscles was or were impaired to the degree that he was either unable to or did not ''operate his car in the manner that an ordinarily prudent and cautious man, in the full possession of his faculties, using reasonable care'', would have operated his automobile in conditions similar to those which prevailed at the time and place in question; or that his condition was, or even approximated, that described or defined in either of the cited cases as necessary to establish the fact that defendant was ''under the influence of intoxicating liquor''. It is true that the prosecuting witness only testified that defendant ''failed to stop at the boulevard stop''; and expressed his opinion that defendant was ''under the influence of liquor''. Specifically, he based that ''opinion'' on his statement that defendant ''drove so recklessly, and he refused to aid me to take her (the injured person) to the hospital''. However, he also testified that ''there was a strong odor of liquor'' on the breath of defendant; that he walked ''pretty steady''; that defendant said ''he was too much in a hurry; . . . you have my name and address''; that defendant was busy picking up storage batteries; but assisted in placing the injured person in another automobile.

Although the ''opinion'' of the witness that defendant was ''under the influence of liquor'' was based principally upon the asserted fact that defendant ''drove so recklessly'',—by the clearest sort of testimony given by the same witness, it appears that *at no time prior to the happening of the accident did he see either defendant or the automobile that the latter had been driving.* The following is a part of his testimony in that regard:

''Q. What do you base that opinion upon?

"A. *He drove so recklessly* and he refused to aid me to take her to the hospital.

"Q. Did you see him coming down McDonnell Street before he struck your car?

"A. He came down at a very rapid speed; *before I saw him,* he hit me in the right rear end of my car.

. . . . . . . . . . .

"Q. . . . His right front end hit your car?

"A. His course in the street was in a straight line.

"Q. Before it struck your car?

"A. *I didn't see him before he struck me; it all happened so quick.*"

Still later, however, purely as a conclusion, and not from actual observation by him, the witness again stated that defendant was "coming at a terrific speed . . . thirty-five to forty miles an hour"; also, that although defendant's automobile struck the rear of the automobile that was being driven by the witness, thereafter each of such automobiles went forward *for a distance of only 20 or 25 feet.* No other witness for the prosecution gave any testimony either with reference to the failure of defendant to stop at "the boulevard stop", or regarding the rate of speed of the automobile that was driven by defendant. It thus becomes apparent that no *substantial* evidence was before the trial court that defendant was "under the influence of intoxicating liquor", as that phrase heretofore judicially has been construed by the courts of this state.

But even assuming against the evidence with relation thereto, and contrary to the rule announced in the authorities to which reference has been had, that defendant was "under the influence of intoxicating liquor", the evidence is entirely lacking in the legal requirement (sec. 501, Vehicle Code) that, being in such condition, defendant did either "any act forbidden by law" or that he neglected to perform "any duty imposed by law" while he was driving his automobile on the occasion in question.

It may be remembered that the information under which defendant was prosecuted charged him with the offense denounced by the provisions of section 501 of the Vehicle Code in that he "did . . . unlawfully . . . drive a certain . . . automobile . . . while under the influence of intoxicating liquor, and *in an unlawful manner*", etc.

The only *"unlawful manner"* in the driving of his automobile by defendant that is even "squinted at" in the evidence is either that he failed to stop at a *legally authorized* boulevard stop, or, that he drove his automobile at a rate of speed inhibited by some statute or ordinance. But, indulging every inference that is possible from the testimony given by the witness to which reference hereinbefore has been had, and therefrom (violently) assuming that defendant failed to stop at a, or *some*, boulevard stop, or that immediately preceding the happening of the accident he had been driving at the rate of 35 to 40 miles per hour, still there is not a scrap of evidence by which it either directly appears, or from which it properly may be inferred, either that his failure to stop at some boulevard stop, or the driving of his automobile at the rate of 35 to 40 miles per hour, was "unlawful", as required or inhibited, respectively, by the provisions of the statute under which defendant was prosecuted. It was not shown whether the scene of the accident was within the boundaries of any city, or whether it was elsewhere than within unincorporated territory in the county of Los Angeles. More particularly, no evidence was introduced with reference to whether, by any ordinance of any city within the county of Los Angeles, or by any ordinance of the county of Los Angeles, a boulevard stop had been ordered or ordained at the intersection of the two streets where the accident occurred. For aught that appears, the boulevard stop sign, if there was any such sign at that point (which fact does not directly appear in evidence), was placed there by some person or persons wholly unauthorized to do so. But even assuming the existence of a legally authorized stop sign *somewhere* at the intersection, by no evidence does it appear that such stop sign affected the street on which defendant was driving. Possibly, the stop sign affected the other street, and it only. Nor was it attempted in any manner to show that a speed of 35 to 40 miles per hour was there inhibited by the provisions of any statute or ordinance. Consequently, a showing of the alleged "unlawful manner" of operating the automobile that was driven by defendant, which was, or may have been, an essential element in the commission of the offense of which defendant was accused, likewise was entirely lacking.

Reverting to the provisions of section 501 of the Vehicle Code hereinbefore quoted, it may be noted that before that statute may furnish the basis for a valid judgment of conviction, it must appear in the evidence adduced on the trial of the action, not only that the defendant therein was driving an automobile "while under the influence of intoxicating liquor"; that while in such condition he committed some act "forbidden by law", or that he neglected to perform some duty "imposed by law";—but in addition thereto, that such act, or such neglect, *"proximately"* caused bodily injury to some person.

Again searching the record in the instant case, it nowhere appears therein that anything either done by defendant, or neglected to be done by him, *proximately* caused the accident to happen, as a result of which any person sustained bodily injury. In that connection, the only pertinent evidence that was before the trial court, as hereinbefore has been outlined, consisted of the pure conclusion by the prosecuting witness that defendant failed to stop at the boulevard stop; that he was driving his automobile at the rate of 35 to 40 miles per hour; and that a collision occurred.

In an action to recover a judgment for damages that may result from personal injuries, it is a well-established principle of law that "the mere happening of the accident" does not establish negligence of the defendant therein. In effect, as tending to prove that any act on the part of defendant, or omission by him to act in response to some duty "imposed by law", was the *proximate* cause of the accident in question, the prosecution failed utterly. As far as the record discloses, the prosecuting witness may have been the only person that was guilty of any negligence in the premises. By his own testimony, he did not see either defendant or his automobile prior to the time when the collision of the two automobiles occurred. It may have been that either the rate of speed at which the automobile of the prosecuting witness was being driven in the intersection of the two streets, or his *evident negligence* in failing to see the automobile that was being driven by defendant, and to appreciate or to properly estimate its speed as it approached the intersection, was the sole and proximate cause of the accident. For aught that appears in the evidence, defendant may have been driving his automobile in a careful manner, but nevertheless, for the reason that the prosecuting witness was guilty of negligence in the

operation of his automobile, defendant was unable to avoid the collision. To my mind, it is manifest that the evidence adduced on the trial of the action was insufficient to support the judgment.