[Civ. No. 5334. Fourth Dist. May 15, 1956.]

BETTY DeARMOND et al., Respondents, v. ANN TURNER et al., Appellants.

Baker, Palmer, Wall & Raymond for Appellants.

Dorris, Fleharty, Phillips & Underhill for Respondents.

MUSSELL, J.—This action arose out of an accident in which plaintiff, Betty DeArmond, was injured when an automobile in which she was riding as a guest was driven by the defendant, Ann Turner, off of Highway 99 north of Bakersfield, and into a tree.

It is alleged in the complaint that defendant, Ann Turner, at the time of the accident, was intoxicated and under the influence of intoxicating liquor and that as a direct and proximate result of said intoxication of said defendant, she drove and operated a Hudson automobile in such a careless and negligent fashion as to cause the same to leave the highway and strike a fixed object adjacent thereto. A jury returned a verdict in favor of plaintiffs and against defendants, Ann Turner and her husband, for $20,000, and defendants appeal from the judgment thereupon entered.

On August 3, 1953, at about noon, defendant, Ann Turner, hereinafter referred to as "defendant," stopped at Trout's Restaurant in Bakersfield and asked plaintiff, Betty DeArmond, hereinafter referred to as "plaintiff," to accompany her to Wasco. Plaintiff, who was employed in the café, agreed to go with the defendant later in the afternoon and at about 4:30 p. m. defendant returned to the café and was observed by plaintiff sitting on a stool at the bar with a bottle of beer and a glass before her. A few minutes later the plaintiff and defendant left for Wasco in a Hudson automobile registered in the name of Dick's Car Lot, the fictitious firm name of a used car business operated by defendant, Richard Turner. Defendant told plaintiff she wanted to go to Wasco to find her husband and "get a power of attorney to the car, because she said she wanted to sell it or trade it off on another car." Defendant testified at the trial, in this connection, that she "had a prospect" for the car and that the purpose of the trip was to tell her husband about the prospect; that the "prospect" was to get in touch with her on the following day and she felt that her husband would

like to sell the car if she could find him to "sign off" the pink slip.

Mrs. Turner was unable to locate her husband in Wasco after visiting several used car lots and she and plaintiff then started back to Bakersfield. Plaintiff testified that when they left Wasco defendant was driving between 65-70 miles per hour; that she said she was in a hurry; that she started crying after they left Wasco and kept talking about her husband; that when they turned toward Bakersfield and were traveling south on Highway 99 at a speed of 65-70 miles per hour, plaintiff said, "Please, for the love of God, slow down or you will kill us both"; that defendant replied, "It would probably be a good idea if I did"; that a light green car, traveling south at a terrific rate of speed, passed the Hudson; that as this car passed, defendant said, "It is going to hit us"; that the green car was more than three car lengths ahead when it cut in ahead of defendant's car; that as the green car passed, defendant pulled to the right and the Hudson went off the highway and struck a tree or "ditch or big rock, or something"and a tire blew out; that plaintiff was thrown under the dashboard of the car and lost consciousness. Plaintiffs' injuries were a broken and dislocated left ankle, a broken femur above the knee, a broken left arm above and below the elbow, a broken breast bone, and a fracture over the left eye. She was confined in the hospital 52 days and was in a complete body cast. She was operated on twice and was still in the cast 10 months after the accident. Thereafter she was in a wheel chair for six months.

A traffic officer arrived at the scene of the accident about 8:30 p. m. on August 3, 1953, which was about 15 minutes after he had received the first call concerning it. He testified that the marks left by the Hudson indicated that the brakes on it had not been applied; that the car traveled 129 feet from the shoulder of the highway before striking a small tree, and traveled an additional 144 feet before striking a second tree. He further testified that about an hour and a half after receiving his first call about the accident, he visited the defendant in a hospital in Oildale; that there was a moderate odor of alcohol on her breath but he did not know whether it was from beer, wine or whiskey; that "her speech wasn't very good, it was slightly incoherent and, oh, mushed up, you might say"; that he asked her what she had been drinking and she stated she had had a "few beers."

Geneva E. Brown, a witness who knew the defendant, testified that at about 4 o'clock on the afternoon of August 3, 1953, she saw the defendant at the bar in Trout's Café; that she was drinking a cocktail; that defendant had a second drink there within a few moments; that she (Mrs. Brown) then went across the street to the "Twin Peppers" and there saw the bartender serve at least two drinks to the defendant; that the defendant was talking in a loud tone of voice and that she did not walk "very steady."

Defendant testified that she did not have more than one beer on the day of the accident; that she was not in the Twin Peppers that day; that the purpose of the trip to Wasco was to locate her husband and tell him about the prospective buyer she had for the car and to sell it. When asked to relate how the accident happened, she stated the right front tire on the Hudson blew out; that there was a car passing at the time and that she jerked her car to the right and it hit the soft dirt.

 Appellant first argues that there was no evidence of defendant's intoxication or that the proximate cause of the accident was due to her use of intoxicating liquor. The questions of whether defendant was drunk or under the influence of intoxicating liquor at the time of the accident and whether, if drunk, or under the influence of intoxicating liquor, that this was the proximate cause of the accident, were questions for the determination of the jury, and where, as here, the minds of reasonable men might differ, it is our problem to find whether or not there is sufficient evidence in the record to support the findings of the jury. (*Lindemann* v. *San Joaquin Cotton Oil Co.*, 5 Cal.2d 480, 489-490 [55 P.2d 870]; *Tomlinson* v. *Kiramidjian*, 133 Cal.App. 418, 422 [24 P.2d 559].)

In *Johnson* v. *Marquis*, 93 Cal.App.2d 341, 351 [209 P.2d 63], judgment for plaintiffs was affirmed on appeal in an action by a guest under the provisions of section 403 of the Vehicle Code for personal injuries arising out of an automobile accident where intoxication of the defendant driver was charged, and it appeared that the defendant driver admitted drinking a 7-Up bourbon highball shortly before the accident. It was there said:

"We are persuaded there is substantial evidence to support the implied findings that Mrs. Marquis was operating her machine while she was under the influence of intoxicating

liquor, and that she was guilty of wilful misconduct which resulted in the accident from which the plaintiffs suffered the injuries complained of. Even though reasonable minds may differ in that regard, this court is not warranted on that account in reversing the findings of the jury and the judgment of the court in denying appellant's motion for judgment notwithstanding the verdict. (*Foerster* v. *Direito,* 75 Cal. App.2d 323, 330 [170 P.2d 986].)''

In *Noble* v. *Key System, Ltd.,* 10 Cal.App.2d 132, 136 [51 P.2d 887], the court defined intoxication as used in section 141¾ of the Vehicle Act as follows:

''Any degree of intoxication which, under all the circumstances of the case, proximately causes the doing or refraining from doing any act which is classified as a negligent act is a sufficient degree of intoxication to come within the statute. (*Knickrihm* v. *Hazel,* 3 Cal.App.2d 721 [40 P.2d 305].)''

In *Smith* v. *Baker,* 14 Cal.App.2d 10, 12-13 [57 P.2d 960], the court said:

''The word 'intoxication,' as used in our guest statute, has been held in *Tomlinson* v. *Kiramidjian,* 133 Cal.App. 418 [24 P.2d 559], to have a meaning similar to 'under the influence of intoxicating liquor' as that term is defined in *People* v. *Ekstromer,* 71 Cal.App. 239 [235 P. 69, 71]. A person may therefore be said to be intoxicated or in a state of intoxication within the meaning of the guest statute, if intoxicating liquor has so far affected his nervous system, brain or muscles 'as to impair, to an appreciable degree, his ability to operate his car in the manner that an ordinarily prudent and cautious man, in the full possession of his faculties, using reasonable care, would operate or drive a similar vehicle under like conditions.' If there was any substantial evidence to show that appellant Beverly Baker was in such condition at the time that the accident happened, then such evidence was sufficient to sustain the finding of intoxication.''

In the instant case there was evidence that defendant had a beer and two cocktails at Trout's Café bar; that a few moments later, while in the Twin Peppers across the street, a witness saw the bartender serve her with at least two drinks; that defendant was talking in a loud tone of voice and it seemed to the witness that she did not walk ''very steady''; that defendant was crying and talking about her husband while she was driving from Wasco; that she was driving at a speed of 70 miles per hour just prior to the acci-

dent; that plaintiff urged the defendant to slow down or she would kill them both and defendant replied, "It would probably be a good idea if I did"; that when the defendant was interviewed by the traffic officer at the hospital after the accident her speech was slightly incoherent and there was an odor of alcohol on her breath; that she told the officer she had a "few beers" to drink. While the defendant testified that a tire blew out and she jerked the car over to the shoulder of the highway, the testimony of plaintiff and the traffic officer was to the effect that the tire blew out, if at all, after hitting the first tree. Plaintiff's testimony was that the green car which passed the Hudson did not turn back into defendant's lane of traffic until it was more than three car lengths ahead and from this testimony the jury could reasonably infer that the green car did not force defendant off the highway. We believe that the foregoing evidence substantially supports the implied finding of the jury that the defendant was intoxicated at the time of the accident and that her intoxication was the proximate cause thereof. We cannot hold otherwise as a matter of law.

There was substantial evidence to support the implied finding of the jury that the defendant was acting as agent of her husband in driving the Hudson automobile at the time of the accident. She testified that she drove the car "off and on" and that her husband drove it whenever he wanted to; that he let her use and drive any of the cars on his used car lot; that the purpose of the trip to Wasco was to tell her husband about a prospect she had who was interested in buying the car and to see if he wanted to sell it.

As was said in *Perry* v. *McLaughlin*, 212 Cal. 1, 14 [297 P. 554]:

"Where proof is made that the car in question was owned by the husband, and was being operated by the wife at the time of the accident, with his express consent and permission, there is created a *prima facie* case authorizing an inference by a court or jury, in the absence of substantial proof to the contrary, that the wife was using the car as the agent of the husband." (Citations.)

Defendant argues that the court erred in giving the following instruction:

"Instruction No. 27. It has been established in this case that at the time of the accident in question, the vehicle then being used by the defendant Ann Turner was owned by the

defendant Richard Turner, and that it was being used with the permission of the owner. It follows, therefore, under the law, that if one is liable, both are liable."

However, in the following instruction, Number 28, the court instructed the jury that it must determine whether at the time of the accident Mrs. Turner was acting as agent for her husband and within the scope of her authority and that if it found she was not acting as such agent or within the scope of her authority, the verdict must then be in favor of the defendant, Richard Turner. Before reaching a verdict, the jury returned into court for further instructions as to limiting the liability of defendant, Richard Turner, to the sum of $5,000. The court then instructed the jury that if it found that the defendant, Ann Turner, was not the agent of her husband, his responsibility would be limited to $5,000. Counsel for both plaintiffs and defendants then agreed that the statement of the court was correct. Under these circumstances, we find no prejudicial error in the giving of the questioned instruction.

Defendant further complains that the damages awarded were excessive. This contention is without merit. In *Miller v. Pacific Constructors, Inc.*, 68 Cal.App.2d 529, 549 [157 P.2d 57], it is held:

"The rule is well established that the amount of a verdict for damages for personal injuries is largely within the sound discretion of the jury, and that it may not be interfered with unless it appears from the record that it is the result of the passion or prejudice of the jurors." (Citations.)

In the instant case, plaintiff's injuries were quite severe and there is no indication in the record that the verdict was not the result of the honest convictions of the jurors. It does not appear that the verdict was the result of passion or prejudice on the part of the jury and it follows that we may not hold that the amount of the verdict was excessive.

The judgment is affirmed.

Barnard, P. J., and Conley, J. pro tem.,* concurred.

A petition for a rehearing was denied June 12, 1956, and appellants' petition for a hearing by the Supreme Court was denied July 11, 1956.

---

*Assigned by Chairman of Judicial Council.