ARTHUR J. FRAME, APPELLANT, *v.* DONALD
GRISEWOOD, RESPONDENT.

No. 4809

March 1, 1965

399 P.2d 450

*Loyal Robert Hibbs,* of Reno, for Appellant.

*Woodburn, Forman, Wedge, Blakey, Folsom and Hug,* of Reno, for Respondent.

# OPINION

By the Court, THOMPSON, J.:

This is a guest-host case (NRS 41.180) in which the jury awarded the guest Grisewood $34,560 from the host Frame, for damages sustained in a one car accident. The claimed basis for the host's liability was intoxication, gross negligence and willful misconduct.[1] The host appeals, assigning five errors. Four of them must be

---

[1]The pre-trial order does not specify willful misconduct as an issue. However, the jury was instructed on that subject, and no objection was made. NRCP 51; Duran v. Mueller, 79 Nev. 453, 386 P.2d 733; Wagon Wheel Saloon v. Mavrogan, 78 Nev. 126, 369 P.2d 688. Accordingly, it was permissible for the jury to consider willful misconduct as a predicate for liability.

resolved with the facts of the accident in mind. The fifth claim of error concerns the voir dire examination of the prospective jurors, and will be considered last.

In most accident cases the evidence is in conflict in material respects. This case is no exception. Therefore we shall state the facts most favorable to the winner below, for he is entitled to that advantage on appeal.

Grisewood and Frame were friends. On August 19, 1962, a Sunday, they and Pat Chickese (now Mrs. Frame) had enjoyed a day's outing at Pyramid Lake drinking beer, playing ball, water skiing, etc. During the course of the afternoon Grisewood injured his left knee kicking a football and was inactive thereafter. Frame drank six or seven cans of beer while there and, before starting home, the three of them stopped at Crosby's Lodge where Frame had two scotch and sodas, and Grisewood had a drink. They then started for home in Frame's 1957 four-door Oldsmobile. Two of the four tires on that car were bald, and the others had very little tread. Frame knew this. Grisewood did not. The three friends sat in the front seat, Frame driving, Pat in the middle, and Grisewood to her right. It was still daylight. The Pyramid Lake road to Reno was paved and two lanes wide. The weather was good and the pavement dry. About one mile before the accident scene Frame "very quickly" passed a car going in the same direction and driven by George Tomlin. Tomlin's speed was about 65 miles per hour. Three or four car lengths behind Frame came an Austin-Healey which also passed the Tomlin car. Tomlin guessed that the Oldsmobile and the Healey were going between 75 and 80 miles per hour when they passed him, and appeared to be racing as they coursed down the highway before him, the Austin-Healey to the left side of the road and the Oldsmobile to the right. Tomlin visually followed them until they rounded a turn about one mile distant. He next noticed a cloud of dust. As Frame commenced that turn his speed was 100 miles per hour. His car went out of control and off the right shoulder of the highway. It traveled 645 feet 11 inches in the sand, coursed back onto the

road and started rolling. It rolled 120 feet before coming to rest upside down 20 to 25 feet from the right side of the pavement. One tire was flat, possibly two. Three highway markers had been knocked over by the uncontrollable Oldsmobile. Grisewood did not warn Frame of danger during the trip.

*1. Intoxication Instruction.* NRS 41.180 recognizes that a host may be found liable to his guest for injury "proximately resulting from the intoxication" of the host. In this case there was evidence from which the jury permissibly could infer that the accident and Grisewood's injuries proximately resulted from Frame's intoxication. Hence, the trial court was required to instruct the jury about "intoxication" as that word is used in the guest law. Over the objection of defense counsel, the following instruction was given: "The term 'intoxication,' under the law that applies to this case, means a condition resulting from the imbibing of alcoholic liquor wherein a person's normal faculties, either of perception, or of will, or of judgment, are impaired so that he no longer has the capacity to drive a vehicle with the caution characteristic of a sober person of ordinary prudence." The giving of that instruction is assigned as prejudicial error.

The appellant's argument rests upon an analogy drawn from the California criminal case of People v. Haeussler, 41 Cal.2d 252, 260 P.2d 8. The court there was dealing with a prosecution for manslaughter under a statute which contained the phrase, "driving a vehicle while under the influence of intoxicating liquor." Because of that phrase the court did draw a distinction between "intoxication or drunkenness" and "under the influence of intoxicating liquor," pointing out that one may be under the influence without being intoxicated. Thus, the theme of the appellant's contention here is that the instruction as given would allow the jury to fix liability upon the host when merely "under the influence," but not intoxicated. We believe the analogy inapposite when considering "intoxication" for the purposes of liability under the Nevada guest law. It seems to us

that the aim of the guest statute is to allow recovery if the host's consumption of alcohol proximately caused injury to (or the death of) his guest. The term "intoxication" is to be construed with this purpose in mind. The precise degree of inebriation is relatively unimportant if, in fact, the host's consumption of alcohol was the proximate cause of injury. Reasonable jurors can make this determination. The legislative emphasis is upon the injury proximately caused by drink, rather than upon the number of alcoholic drinks ingested. Were it otherwise, scientific proof of the driver's blood-alcohol content would be required in every case, before liability could attach. The instruction given in this case serves the legislative purpose and we approve it as a sensible definition of "intoxication" under the guest statute. The tenor of Taylor v. Joyce, 4 Cal.App.2d 612, 41 P.2d 967, and DeArmond v. Turner, 141 Cal.App.2d 574, 297 P.2d 57, though not squarely on point, appears to support us.

2. *Failure to Give "Duty to Warn" Instruction.* The host offered an instruction concerning a guest's duty to warn the host of danger. The trial court refused to give it. That refusal is assigned as prejudicial error. The host contends that the instruction was relevant to his defense that the guest was contributorily negligent. On the record in this case the court ruled correctly. There is no showing that the guest was aware of a danger of which the host was unaware. This case involves a one car accident on a safe highway. The condition of "danger" was the conduct of the host in driving at an excessive speed, in a car having two bald tires and two with sparse tread, after drinking six or seven beers and two scotch and sodas. These facts were known to the host and he knew, or should have known, of the danger inherent in them. This is not the kind of a situation where a duty to warn is imposed upon the guest. A fortiori, his failure to warn does not bear upon the issue of contributory fault.

3. *The Host's Affirmative Defenses.* Next the host contends that his affirmative defenses of assumed risk

and contributory negligence were each established as a matter of law. The contention is not sound. The defense of assumed risk is based on the theory of consent. The main requisites are a voluntary exposure to danger and actual knowledge of the risk assumed. Sierra Pacific v. Anderson, 77 Nev. 68, 358 P.2d 892; Papagni v. Purdue, 74 Nev. 32, 321 P.2d 252. Here when the guest got into the host's car and started for Reno he did not possess actual knowledge that two of the tires were bald; that his host was intoxicated; that his host would race with the Austin-Healey and attempt to negotiate a turn at 100 miles per hour. Of course, there was much other evidence in the case from which the jury could inferentially have concluded otherwise. It chose not to do so. Its ruling on this issue, based upon evidence favorable to the guest, may not be overturned by us.

The same is true as to the issue of the guest's contributory fault. We have already held that the guest's failure to warn was not, in the circumstances of this case, probative of contributory negligence. Further, it strikes us that once the trip was commenced, the race with the Austin-Healey underway, and high speed attained, there was little, if anything, the guest could do to protect himself, except to sit tight and hope for the best. At that point a choice was not open to him. In any event, there is absolutely nothing in the record to show that the guest's action was a proximate or concurring cause of the accident. The fact that he got into the car did not cause the accident. The fact that he was seated in the front seat did not cause the accident. His failure to warn his host was immaterial for the reasons already expressed. The jury was fully justified in concluding that the guest was not chargeable with contributory fault.

*4. Evidence as to Speed.* Over objection, the trial court allowed Mr. and Mrs. Tomlin to testify about Frame's high speed and apparent racing with the foreign car at a point about one mile distant from the accident scene. The reception of that testimony is assigned

as prejudicial error, the argument being that Tomlin's observation was at a "remote point" and not probative of speed or the manner of the host's driving at or near the place of the accident. The cases are collected at 46 A.L.R.2d 9. In the circumstances here present the lower court ruled correctly. In answer to the question, "What did you observe with regard to the Oldsmobile and the small sportscar after they passed you?", Mr. Tomlin said, "Oh, I observed they went down the road, and they were side by side, going down the road, until they went around a curve and went out of sight. Then I didn't see what happened. The first thing I seen was a big cloud of dust." The continuing observation of Frame's driving to a point immediately before the accident destroys the significance of the objection of remoteness. Cf. Patton v. Henrikson, 79 Nev. 197, 380 P.2d 916. The testimony was plainly admissible on the issues of gross negligence and willful misconduct (Fleming v. Lawson, 240 F.2d 119), and also as independent proof of speed at the place of the accident (Shepard v. Harris, 329 S.W.2d 1), for it was probable that the speed at which Frame passed Tomlin continued until the accident occurred. Indeed, other evidence shows this to have been the case.

5. *Voir Dire Examination of Jurors.* The last assignment of error attacks the preclusionary ruling of the trial court as to the voir dire examination of prospective jurors. Effective March 16, 1964, NRCP 47(a) provided that the court shall conduct the examination of prospective jurors and may permit such supplemental examination by counsel as it deems proper. Before trial, counsel for each side submitted a list of questions to the court and requested that the court ask them of the prospective jurors. Defense counsel had proposed twelve questions, and plaintiff's counsel nine. Most of them were not asked, though some were. It is now contended that, by failing to ask all questions suggested, the defendant's counsel was forbidden important information which would enable him to intelligently exercise peremptory challenges. Absent such information, his statutory right to excuse a juror peremptorily is hollow and without substance or meaning.

First, we must place counsel's contention in focus. He does not assert that his right to challenge for cause (NRS 16.050) was affected by the court's restrictive ruling. His sole contention is that he was precluded from developing information that would permit the intelligent exercise of the four peremptory challenges allowed by NRS 16.040. Of significance is the fact that the peremptory challenge does not exist as a matter of right, apart from legislative provision therefor. The legislature may determine the number of peremptory challenges each side is to have, or whether any shall exist at all. State v. McClear, 11 Nev. 39. The same is not true of the right to challenge for bias. A legislature cannot abrogate that right. State v. McClear, supra. It is plain that the peremptory challenge does not enjoy the dignity accorded the challenge for cause. Thus it is appropriate for the trial court to treat a proposed voir dire examination designed to develop information for the exercise of a peremptory challenge differently than a voir dire examination to develop grounds for a challenge for cause. For review purposes, the test in either instance is whether an abuse of discretion has occurred.[2] However, because of the inherent distinction between the challenge for cause and the peremptory challenge, a lower court normally is given considerably more latitude when dealing with the latter than when concerned with the challenge for cause.

In this case, defense counsel wanted to know whether the prospective jurors used alcoholic beverages and to what extent; whether they had driven a car after having one or two drinks; the speed at which they normally drove on an unobstructed highway; when they replaced a tire because of wear and tear; whether they used recapped tires, etc. The court did not ask those questions.

We hold that the court did not abuse its discretion in so limiting the voir dire examination. Our ruling rests

[2] Annotations in this general area are: 72 A.L.R.2d 905; 4 A.L.R.2d 1200; 1 A.L.R. 1688; 158 A.L.R. 1361; 64 A.L.R. 645.

upon the fact that the proposed questions were not relevant to any statutory ground of challenge for cause. The rejection of such questions seldom will supply an appropriate basis for appellate court intervention. Were we to hold otherwise and reverse we would have to presume an unfair and partial jury even though each juror had been passed for cause. We are confident that the law does not suggest that result.

Affirmed.

BADT, J., concurs.

At conference, following submission of this case, McNAMEE, C. J., expressed his agreement that the judgment below be affirmed. However, because of hospitalization, he has not read nor signed this opinion.