## PATRICIA A. OTTERBECK, Appellant, v. NANCY ANN BAKER LAMB, Respondent.

No. 5679

July 14, 1969                    456 P.2d 855

*Vargas, Bartlett & Dixon* and *Steven T. Walther,* of Reno, for Appellant.

*Richard P. Wait,* of Reno, for Respondent.

## OPINION

By the Court, COLLINS, C. J.:

This appeal is from a final judgment and an order denying appellant a new trial in a personal injury action arising out of

a two-car collision. The jury found for respondent (defendant below), driver of one vehicle, and against appellant (plaintiff below), a passenger in the other vehicle. We think prejudicial error was committed in instructing the jury, reverse the order and remand the action for a new trial.

Appellant, Mrs. Dickinson, and their husbands were vacationing at Elk Point, Lake Tahoe, Nevada, and had for several years past. All four were deaf mutes. Mrs. Dickinson was a licensed California driver and qualified as a lawful operator in Nevada. Appellant had ridden with her as a passenger on many previous occasions, including several crossings of U.S. 50 on Elk Point Road during 1965 and in previous years.

At midday on July 14, 1965, Mrs. Dickinson and appellant as her passenger were travelling from Elk Point to the Round Hill Shopping Center east on Elk Point Road, which crossed U.S. Highway 50. Elk Point Road is a two-lane roadway running east and west. U.S. 50 is a four-lane arterial highway running north and south. The highway is divided by double yellow lines, not by islands. The intersection is controlled by a stop sign on Elk Point Road. The day was warm and clear. The pavement was dry.

They stopped at the intersection, both looked left, or north, along U.S. 50 and then right, or south, where they could see considerable distance to the crest of a hill. They both observed cars approaching the intersection from the south. They waited, and they both looked in each direction a second time and then proceeded across the four lanes of U.S. 50 at about 10 to 12 miles per hour. The Dickinson Pontiac was struck by the Lamb Lincoln on the right side where appellant was sitting. Neither Mrs. Dickinson nor appellant observed the Lamb automobile until it struck them. After the Dickinson auto started across the intersection, appellant maintained no lookout but directed her gaze to the accelerator of the car. Appellant was knocked unconscious, hospitalized for six weeks, suffered from a cerebral concussion, a skull fracture, a fracture of the left pelvis, several fractured ribs, and a contusion of the right lung.

Respondent, Mrs. Lamb, had been visiting her mother in Placerville, California. She left for Reno about 9 a.m., driving a 1965 Lincoln automobile for the first time, stopped for breakfast at Lake Tahoe, and then proceeded north on U.S. 50 toward Carson City. As she approached Elk Point Road she came over the crest of a hill, traveling about 40–45 miles per hour, in the outside or east lane. At a distance of about 1,000 to 1,500 feet she observed a beer truck and a white automobile

stopped on Elk Point Road, on opposite sides of U.S. 50 at the intersection. She then changed to the inside lane, and approximately 150 feet from the Elk Point Road intersection observed the white Pontiac directly in front of her. She applied her brakes, sounded her horn, swerved to the right, or east, but collided with Mrs. Dickinson's automobile.

The jury returned a verdict for respondent. Appellant moved for a new trial, which was denied and from which this appeal is taken.

The issues for our decision are these:

I. Did the giving of Instruction No. 29 concerning the duty of an automobile passenger to look out and give warning constitute reversible error?

II. Was it reversible error to give Instruction No. 12 concerning the standard of care which must be exercised by one suffering from a physical impairment?

III. Did Instruction No. 18 unfairly and erroneously state the law of the right-of-way of a driver upon a public highway?

I. Instruction 29 reads as follows: "A passenger in an automobile is under a legal duty to take ordinary precautions for her own safety and to use ordinary care for her own protection, and whether or not she exercises ordinary care for her own safety is a question of fact for the jury to decide. A passenger in an automobile cannot shut her eyes to danger in blind reliance upon the driver, but must take such action for her own protection as a person of ordinary care and prudence would take under the same or similar circumstances."

Appellant contends it was error to give the last sentence of that instruction because it (1) incorrectly states the law, (2) was not warranted by the facts in the case, (3) was argumentative, and (4) was prejudicial because of the manner it was commented upon by respondent's counsel during argument.

Respondent, on the other hand, contends Instruction 29 (1) was not objected to with specificity as required by NRCP 51, (2) imposed upon the passenger only the duty of ordinary care, and (3) was proper under the facts and circumstances of this case.

A. During settlement of instructions, counsel for appellant made the following objection to Instruction 29: "We object to the giving of Instruction 31 [now No. 29] on the grounds that the statement is simply taken from a case, not from any appropriate book of instructions, and we object particularly, your Honor, to this phrase, 'A passenger in an automobile cannot shut her eyes to danger in blind reliance on a driver, but must

take such action for her own protection as a person of ordinary care and prudence would take under the same or similar circumstances.'

"I think the first part of the—*the first sentence correctly states the law. I think the second part reiterates and emphasizes* and uses adjectives, where it shouldn't be using such words as 'blind reliance,' and things like that. That's *argumentative.*" (Emphasis added.)

The Court, in ruling on the objection stated, "All right, it will be noted."

NRCP 51 states in part that: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects *and the grounds of his objection.*" (Emphasis added.)

The rule has been interpreted in several decisions by this court. They are: Lathrop v. Smith, 71 Nev. 274, 288 P.2d 212 (1955); Wagon Wheel v. Mavrogan, 78 Nev. 126, 369 P.2d 688 (1962); Duran v. Mueller, 79 Nev. 453, 386 P.2d 733 (1963); Hotel Riviera v. Short, 80 Nev. 505, 396 P.2d 855 (1964); Downing v. Marlia, 82 Nev. 294, 417 P.2d 150 (1966); Shoshone Coca-Cola Bottling Co. v. Dolinski, 82 Nev. 439, 420 P.2d 855 (1966), and Tidwell v. Clarke, 84 Nev. 655, 447 P.2d 493 (1968). The specific objective of the rule is to apprise the trial court of error before it occurs and to assist the judge in giving legally correct instructions to the jury.

Appellant's counsel told the court the first sentence of Instruction 29 correctly stated the law, *a fortiori;* the second sentence incorrectly stated the law. He also specifically told the court it was argumentative and that considering the objection as a whole, it would be prejudicial. The judge indicated he understood the objection by stating, "All right, it will be noted."

Is that a sufficient objection under the authorities to preserve the error for our consideration? We think so.

Counsel, in the heat of a trial, cannot be expected to respond with all the legal niceties and nuances of a brief writer. If no objection to an instruction is made, there is no compliance with Rule 51 and the error is not preserved for appellate consideration. Wagon Wheel v. Mavrogan, supra; Hotel Riviera v. Short, supra; Shoshone Coca-Cola Bottling Co. v. Dolinski, supra. If an objection is so general that it does not state any ground,

review will be denied. Lathrop v. Smith, supra. If it is merely contended that an instruction is "proper" and should be given, review is precluded unless there is "plain error." Downing v. Marlia, supra. And in Tidwell v. Clarke, supra, we gave an example of "plain error." We think the objection here meets the test of Tidwell v. Clarke. Appellant's counsel was sufficiently alert and legally observant to agree with the court that one sentence of Instruction 29 correctly stated the law, while another did not. Counsel, in their briefs before the court, have spent hours and pages researching, legally analyzing and arguing the correctness of that one sentence of Instruction 29. It will still not be settled in this state unless we agree to consider the alleged error. It seems harsh to refuse consideration of an alleged erroneous instruction under these circumstances.

■■■■■

Was the second sentence of Instruction 29 erroneous, and if so, was it prejudicial, requiring reversal and retrial? We think it was prejudicially erroneous. We also think it was not supported by the evidence.

■■■■■

B.   There is no question but that a passenger in an automobile has a legal duty to take ordinary precautions for his own safety, use ordinary care for his own protection, and that the determination of whether this duty is complied with is one of fact for the jury.

It is also unquestionably the majority rule in the United States that a passenger in an automobile has no duty of lookout or duty to warn the driver in the absence of special circumstances. Restatement of Torts Second, Sec. 495, Comments c-f, pages 556–558; Duffy v. Flynn, 72 Nev. 278, 302 P.2d 967 (1956); Frame v. Grisewood, 81 Nev. 114, 399 P.2d 450 (1965); Drake v. Driscoll, 267 F.2d 274 (5th Cir. 1959); Watters v. Parrish, 115 S.E.2d 1 (N.C. 1960); Lamfers v. Licklider, 332 S.W.2d 882 (Mo. 1960); Robinson v. Cable, 11 Cal.Rptr. 377 (Cal. 1961); Pobor v. Western Pacific Railroad Co., 359 P.2d 474 (Cal. 1961); Klein v. Southern Pacific Co., 21 Cal.Rptr. 233 (D.C.App. 1962); Van Pelt v. Carte, 26 Cal.Rptr. 182 (D.C.App. 1962); Mitchell v. Colquette, 379 P.2d 757 (Ariz. 1963); Borders v. Borders, 376 S.W.2d 519 (Ky. 1964).

■■■■■■

The special circumstances which create the duty are obvious, imminent, danger, of which the passenger is aware and the

driver is not; or where the driver is sleepy or intoxicated, which is known to the passenger; or where road or weather conditions are particularly hazardous. Otherwise, the passenger should refrain from advice, instruction or attempted control over the driver, for fear of creating more danger by a distraction rather than lessening it by unwarranted, unwise advice. If the passenger specifically undertakes a lookout, then he is under a duty to do an ordinarily careful job of it.

Instruction No. 29 states in part that, "A passenger in an automobile cannot shut her eyes to danger in blind reliance upon the driver. . . ." This is not an accurate statement of the law concerning the duty of lookout and warning as set forth above. In the absence of special circumstances a passenger is entitled to rely on the driver. That this instruction was prejudicial is clearly demonstrated in the argument to the jury by respondent's counsel relating to the second sentence of Instruction 29. He argued at various times to the jury as follows: "The plaintiffs have the burden of proof in this case, proof to show that Mrs. Baker was negligent, and if in this case she was not, and if Mrs. Otterbeck, along with Mrs. Dickinson, failed to look, *and Mrs. Otterbeck was not careful herself, then she is not legally expected to recover damages.*

"There is no testimony that either Mrs. Dickinson or Mrs. Otterbeck ever saw the other car. Now, doesn't that tell you, assuming for a moment that the car was traveling at a speed of 60 miles an hour, Mrs. Otterbeck sitting on the right of the car, right side of that car, had she looked to the right at all could have seen an automobile coming down the highway, if you assume it was going sixty miles an hour. And, ladies and gentlemen, the *failure to look and see on the part of Mrs. Otterbeck bars a recovery for damages in this case.*" (Emphasis added.)

Those arguments of respondent's counsel literally told the jury that if appellant didn't keep a lookout (which she did not), she couldn't recover from respondent. That part of Instruction 29, together with that argument, constitutes reversible error, justifying a retrial.

C. NRCP 61 commands that we shall disregard any error which does not affect the substantial rights of the parties.

This is a case in which a plaintiff-passenger, who was not in control of the car in which she was riding, was defeated in her effort to recover damages from the driver of the adverse car. She did not sue her host. The defendant denied liability on two grounds. First, that the sole proximate cause of the collision

was the negligence of Mrs. Dickinson, the host driver. Second, that the plaintiff-passenger was herself guilty of contributory fault in failing to control the manner in which her host drove the car. Rest. Torts, 2d ed., Section 495.

Since the jury returned a general verdict, we are not apprised of the basis for its decision. Recovery may have been denied because the jury believed that the defendant was not negligent and that the sole proximate cause of the collision was the negligence of Mrs. Dickinson, the host driver; or, because the plaintiff-passenger was in some way guilty of contributory fault in causing the accident. A request was not made that the general verdict of the jury be accompanied by answers to interrogatories. NRCP 49(b). In these circumstances, substantial error in the charge of the court as to either of the alternative theories of liability or defense would require a remand for another trial. Lightenburger v. Gordon, 81 Nev. 553, 579, 407 P.2d 728 (1965). Indeed, an erroneous instruction as to the duty or standard of care owing by one party to the other is substantial error requiring another trial. Murdock v. Petersen, 74 Nev. 363, 332 P.2d 649 (1958).

Instruction No. 29 concerned the duty of the plaintiff-passenger and also dealt with one of the alternative theories of defense. Accordingly, under the Lightenburger and Murdock rules, this case must be tried anew.

D.  Appellant also contends that even if Instruction No. 29 correctly stated the law concerning the duty of lookout and duty to warn, it should not have been given in this case because the evidence does not support a finding of any special circumstances which would give rise to such a duty on the part of appellant. Since this case is remanded for new trial, we feel that this issue should be decided for the direction of the lower court.

No cases have been found by counsel on this appeal, nor by the court, which makes deafness alone a special circumstance creating a duty to keep a lookout by appellant. The evidence indicates appellant did not keep a lookout for other traffic or dangers, but looked at the accelerator of Mrs. Dickinson's car as it proceeded across the intersection of U.S. 50 and Elk Point Road. In fact, the evidence which was presented tended to eliminate any special circumstances which would have created the duty of lookout. The same passenger and driver had traversed the same intersection many times before that same week and in previous years. They both looked north and south on

U.S. 50 before starting across. The inference from that evidence is that they concluded the opportunity of traversing the intersection could be safely and timely made.

It is doubtful under the evidence in the present record that the second sentence of Instruction 29 should have been given at all.

There are two additional allegations of error for our consideration.

II. Instructions Nos. 11 and 12 read as follows: "11. The conduct of a person using the streets or highways of this state, when such person is suffering from physical impairment, is to be measured by the conduct of a reasonably prudent person suffering from the same physical impairment in the same or similar circumstances. People who can neither speak nor hear, must exercise proportionately more precaution that one who can speak and hear in order to meet the standard of ordinary care.

"12. The misfortune of being deaf and mute does not relieve the afflicted person from the duty to exercise ordinary care, but rather must impress upon him or her the duty of greater precaution to avoid injury, since strangers have no notice of the infirmity, and have the right to suppose that parties will act the same as persons of the ordinary senses."

Appellant contends that part of Instruction 12 was error. The objected-to part is as follows: ". . . but rather must impress upon him or her the duty of greater precaution to avoid injury. . . ." We agree it was error and misleading, but standing alone would not be prejudicial or warrant reversal.

There is no doubt a person with impaired faculties is obligated to use ordinary care for their own protection, and to achieve the standard of ordinary care they must use their non-impaired faculties to rise to that standard. Restatement of Torts, Second, Section 283C, Comment c, page 18; Prosser, Law of Torts, Third Edition, Section 32, page 155; Vol. 5, Personal Injury, Negligence, Section 4.01(d), pages 366–367; Keith v. Worcester & B. V. St. R. Co., 82 N.E. 680 (Mass. 1907); Carroll v. C. V. & Q. Ry. Co., 142 Ill.App. 195 (1908); Reynolds v. Los Angeles Gas & Electric Co., 122 P. 962 (Cal. 1912); Trumbley v. Moore, 39 N.W.2d 613 (Neb. 1949); Goodman v. Norwalk Jewish Center, 139 A.2d 812, 815 (Conn. 1958).

The objected-to part of Instruction 12 is misleading and

does not correctly state the law. Jones v. Bayley, 122 P.2d 293 (Cal.App. 1942). It distinctly conveys the strong impression that a person with impaired faculties must exercise greater than ordinary care for his own protection. Such is not the law. Conjorsky v. Murray, 287 P.2d 505 (Cal.App. 1955). He need rise no higher in his duty of care than the ordinary man with unimpaired faculties. To reach that standard of ordinary care in some circumstances, however, he must compensate for or make up the difference with his unimpaired faculties. Cucinella v. Weston Biscuit Co., 265 P.2d 513 (Cal. 1954), footnote 2, page 516. The giving of such an instruction would presume, of course, that there was evidence before the court which justified such instruction, as where the failure to exercise the duty of ordinary care was the result of some impaired faculty. There is nothing in the record to show the appellant was obligated to hear the approach of respondent's automobile.

III.    Appellant complains as error the giving of Instruction 18. That instruction reads as follows: "The driver of a vehicle upon a public highway who is acting lawfully and without negligence and has the right-of-way is entitled to assume, in the absence of reasonable grounds to think otherwise, that other persons using or entering upon the highway will obey the law and exercise ordinary care and to assume that such other person will yield the right-of-way to her." Appellant suggests that Instruction 18 should be further qualified or apply only when vehicles are approaching the intersection at approximately the same time.

It is true that Instruction 18 must be read with Instruction 24, a quotation of NRS 484.163, which was given to the jury and reads in part as follows: "Such driver after having stopped shall yield the right of way to any vehicle which has entered the intersection from another highway or which is approaching so closely on such highway as to constitute an immediate hazard, but the driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection shall yield the right of way to the vehicle so proceeding."

The correct analysis of the right of way between a driver on an arterial highway such as U.S. 50 and a secondary roadway such as Elk Point Road was stated in Botts v. Rushton, 63 Nev. 426, 172 P.2d 147 (1946), at page 439. That opinion reads:

"A driver on a through or arterial highway who is driving at lawful speed and in a lawful manner has the right of way at an intersection with a secondary stop sign highway, and is entitled to assume that a driver on the latter will obey the law until the contrary appears, or should appear, to a reasonable

man in his position. If the favored driver, keeping a careful lookout as he approaches or enters the intersection, sees or becomes aware of anything indicating that the driver on the secondary highway does not intend to yield the right of way, he is bound to use the care of an ordinary prudent person in endeavoring to avoid an accident. If the driver on the favored highway is himself free from negligence in approaching the intersection, he has the right to presume that the driver on the disfavored highway will yield the right of way to him and not proceed into the intersection until he can do so without creating a traffic hazard. The purpose of arterial highways is to facilitate through traffic, afford rapid transit, and permit vehicles thereon to move freely, thus accelerating the flow of traffic over such favored highways. As a general rule it is not necessary for drivers on such highways to stop or slow up as they reach a stop sign intersecting highway in order to ascertain whether or not the driver on the latter is going to stop and yield the right of way. The right of way enjoyed by the driver on the favored highway does not relieve him of the duty to keep a careful lookout so that he may observe whether the driver on the disfavored highway is going to yield the right of way; but he is not obliged to have his car under such control at an intersecting stop sign highway that he may stop at once and so avoid collision with persons who may illegally come into his path. . . . The favored driver's right of way is not absolute." Upon retrial we feel an instruction should be drafted and given to the jury which incorporates the qualified right of each driver approaching such an intersection.

The judgment and order denying new trial is reversed and the matter remanded for further proceedings.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.